THE SKANEATELES WATER WORKS COMPANY, Appellant, *v.* THE VILLAGE OF SKANEATELES; E. NORMAN LESLIE, as President of said Village; JOHN CONNELL, EDWIN WHITING, EDWARD DENT, as Trustees of said Village, and LEMUEL D. HALL, EDWARD ECKETT, JAMES A. ROOT and JOHN L. SHULTZ, as Water Commissioners of the Village of Skaneateles, Respondents.

1. VILLAGES — MUNICIPAL WATER SUPPLY — ACQUISITION OF WORKS OF PRIVATE CORPORATION. The act (L. 1875, ch. 181), authorizing villages to supply themselves with water and permitting the acquisition of the works of any private corporation that may be supplying the municipality with water, does not make it the duty of the water commissioners to acquire the property of the existing corporation or corporations.

2. VILLAGE NOT BOUND TO CONDEMN PROPERTY OF EXISTING WATER WORKS CORPORATION. Under the act of 1875, the right to determine whether the property of an existing private water works corporation should be taken or not is submitted to the determination of the local authorities; and, hence, the refusal of the village to acquire such property by proceedings *in invitum* does not tend to support the claim of the private corporation for an injunction against the construction and operation of an independent system of water works by the village, the act of 1875 being valid.

3. VALIDITY OF VILLAGE WATER ACT. The legislation embodied in the Village Water Act of 1875 was not in excess of the power of the legislature in so far as it granted to the villages of the state the right to construct and operate water works, notwithstanding the existence in the vil-

lage of a private corporation engaged in the same business, which had obtained its franchise under the act of 1873 (Ch. 737) providing for the creation of water works companies in towns and villages.

4. WATER COMPANY'S FRANCHISE NOT EXCLUSIVE. In conferring a franchise upon a company formed under the act of 1873, the village, by not expressly parting with it, reserves the right to grant a franchise to another corporation to carry on the same business in the same territory; and, under the authority acquired from the legislature, the municipality has the power to determine whether the right reserved upon the granting of the first franchise shall be exercised by a private corporation or by the municipal corporation.

5. VALIDITY OF LEGISLATION LEADING TO MUNICIPAL COMPETITION. Legislation is permissible which merely threatens a private water works company, formed under the act of 1873, with the consequences of local municipal competition; and provisions which go no further than that do not impair the obligation of the contract created by the grant of corporate powers.

6. VALIDITY OF VILLAGE WATER ACT NOT AFFECTED BY SEVERABLE OBNOXIOUS PROVISIONS. Although there are certain provisions of the act of 1875, as amended and supplemented, which authorize the taxation of a private water works company for the payment of the obligations incurred in the construction of water works by the village, and authorize a discriminating tax against the patrons of the company, which provisions, if allowed to remain, would condemn the act as impairing the obligation of the company's franchise contract, they are not essential to the main object of the act, and therefore may be eliminated without interfering with the validity of the general purpose of the act, which is to enable villages to provide for an independent system of water works, to be owned and controlled by the municipal authorities.

*Skaneateles Water Works Co.* v. *Vil. of Skaneateles*, 33 App. Div. 642, affirmed.

(Submitted October 20, 1899; decided December 5, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 18, 1898, affirming a judgment entered upon the report of a referee dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Charles A. Hawley* and *George Barrow* for appellant. The doctrine which seems to be invoked, that in franchises of this character the grantee gets nothing whatever by implica-

tion, is not sustained by authority and is contrary to the fact. (3 Kent's Comm. 458, 459; *F. P. B. Co.* v. *Smith*, 30 N. Y. 63; *Matter of City of Brooklyn*, 143 N. Y. 596; *Fletcher* v. *Peck*, 6 Cranch, 87; *People* v. *O'Brien*, 111 N. Y. 1.) The village, under the delegated authority of the legislature, having granted to the private company its particular franchise, under which it was authorized to enter into contractual relations with the village and the village with it, and under which it engaged on its part to supply the village and its inhabitants with water, the act of the legislature conferring power thereafter upon the village to render itself the precise service which it had agreed with the company that it might render was an act of the legislature impairing the obligation of a contract and violative of the Federal Constitution in that respect. (8 Am. & Eng. Ency. of Law, 586; *S. W. Co.* v. *City of Syracuse*, 116 N. Y. 167; *White* v. *Meadville*, 177 Penn. St. 643; *Metzger* v. *Beaver Falls*, 178 Penn. St. 1; *Fletcher* v. *Peck*, 6 Cranch, 87; *Sinking Fund Cases*, 99 U. S. 700.) The act, chapter 181, Laws of 1875, in so far as it authorizes a village to construct, maintain and operate a system of water works of its own, after it has granted to a private company a franchise to perform that service for it, such franchise having been accepted by the company, which by virtue thereof has acquired the necessary property to render the service, which service is being actually rendered, is unconstitutional and void in that it authorized the taking of private property for a public use without compensation. (*Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *M. El. Ry. Co.*, 104 N. Y. 268; Lewis on Em. Domain, § 54; *People ex rel.* v. *Mayor, etc.*, 4 N. Y. 419; *Pumpelly* v. *G. B. Co.*, 13 Wall. 166.) The act in so far as it authorizes a village to do what the village of Skaneateles has done in this case is unconstitutional and void in that it violates that provision of the Constitution which declares that no person shall be deprived of his property without due process of law. (*Matter of Jacobs*, 98 N. Y. 98; *Pumpelly* v. *G. B. Co.*, 13 Wall. 166; *Wynehamer* v. *People*, 13 N. Y. 378; *People ex rel.* v. *Otis*, 90 N. Y. 48; *Davidson* v.

*New Orleans*, 96 U. S. 97.) Any express reservation by
the legislature of power to take away or destroy property
lawfully acquired or created would necessarily violate the
fundamental law, and it is equally clear that any legislation
which authorizes such a result to be accomplished indi-
rectly would be equally ineffectual and void. (*People* v.
*O'Brien*, 111 N. Y. 1.) The law of 1875 (Ch. 181), in
so far as it authorizes what has been done by the village
of Skaneateles in this case, is also violative of article XIV
of the Federal Constitution, which provides that "no state
shall deny to any person within its jurisdiction the equal pro-
tection of the laws." (*M., etc., Ry. Co.* v. *Beckwith*, 129 U.
S. 26; *H. Ins. Co.* v. *New York*, 134 U. S. 594; *L., etc., Ry.
Co.* v. *R. R. Comrs.*, 19 Fed. Rep. 679; *San Mateo County*
v. *S. P. R. R. Co.*, 13 Fed. Rep. 733.) A consideration of
the constitutional guaranties herein discussed, together with a
consideration of the inherent injustice and oppression of legis-
lation such as is here claimed for the act of 1875, leads to a
different interpretation of that act, and to a denial of the con-
tention that the legislature intended to confer upon the vil-
lage the power claimed for it by the respondent. (23 Am. &
Eng. Ency. of Law, 361.) At the time when the plaintiff was
incorporated and received its franchise from the village, the
village was possessed of two methods of providing itself with
water, and having made its election to provide itself through
the agency of the plaintiff, it had no right to repudiate that
election and resort to the other method. Its power was spent
when it had resorted to either of the two methods. (*How-
ard's Appeal*, 162 Penn. St. 374; *White* v. *Meadville*, 177
Penn. St. 643; *Metzger* v. *Beaver Falls*, 178 Penn. St. 1; *L.
W. Co.* v. *C. T. U. Co.*, 148 Penn. St. 568.)

*William G. Tracy* and *Martin F. Dillon* for respondents.
There are no equities existing in this case in favor of the
plaintiff. (L. 1897, ch. 414, § 230.) The village is not
estopped from establishing a water system of its own by the
franchise granted to the plaintiff. (*S. W. Co.* v. *City of*

*Syracuse,* 116 N. Y. 167; *N. O. G. Co.* v. *L. L. Co.,* 115 U. S. 650; *Matter of City of Brooklyn,* 143 N. Y. 596; *W. W. Co.* v. *Village of Warsaw,* 16 App. Div. 502; *L. G. Co.* v. *C. G. Co.,* 115 U. S. 683; *F. P. B. Co.* v. *Smith,* 30 N. Y. 44; *Colby University* v. *Village of Canandaigua,* 69 Fed. Rep. 671; *A. & C. R. R. Co.* v. *Douglass,* 9 N. Y. 444; 1 Dillon on Mun. Corp. [4th ed.] §§ 692–696; *State* v. *C. G. Co.,* 18 Ohio St. 262; *Indianapolis* v. *I. G. Co.,* 66 Ind. 396.) By the franchise granted by the village trustees to the plaintiff, and the subsequent five years' contract, the village did not elect to take water from the plaintiff forever, and agree not to establish a plant of its own. (L. 1870, ch. 291; L. 1875, ch. 181; L. 1885, ch. 422; L. 1894, ch. 230, § 81; L. 1897, ch. 414.) Chapter 181 of the Laws of 1875 is not unconstitutional upon the ground that it is a law impairing the obligation of a contract. (*People ex rel.* v. *Mayor, etc.,* 4 N. Y. 419.) Chapter 181 of the Laws of 1875 is not unconstitutional upon the grounds that it authorizes the taking of private property for a public use without compensation, or that it deprives the plaintiff of its property without due process of law. (*People* v. *Mayor, etc.,* 4 N. Y. 419; *People* v. *H. Ins. Co.,* 92 N. Y. 347; *People ex rel.* v. *Comrs. of Taxes,* 104 N. Y. 249; *Matter of Van Antwerp,* 56 N. Y. 265; *People ex rel.* v. *Lawrence,* 41 N. Y. 140; *Howell* v. *City of Buffalo,* 37 N. Y. 270; *Brewster* v. *City of Syracuse,* 19 N. Y. 118.) Chapter 181 of the Laws of 1875 does not violate the provision of the Constitution that no state shall deny to any person within its jurisdiction the equal protection of the laws. (*W. R. B. Co.* v. *Dix,* 6 How. [U. S.] 507; Cooley on Const. Lim. [5th ed.] § 341.) Section 22 of chapter 181 of the Laws of 1875 does not require the village to acquire the property of a water corporation existing therein before establishing a plant of its own, or evidence an intent on the part of the legislature that a village which has granted a franchise to a water corporation shall be held to have elected to take water from that corporation forever. (L. 1897, ch. 414, §§ 221, 222.) The contract made

by the trustees of the village in 1889 for a supply of water was illegal, and no right could be acquired by the plaintiff thereunder. (*Mertz* v. *City of Brooklyn*, 33 N. Y. S. R. 577; Suth. on Stat. Const. § 152; *Matter of The Evergreens*, 47 N. Y. 216; L. 1896, ch. 978; L. 1879, ch. 129.)

Parker, Ch. J.    The plaintiff, a domestic corporation organized pursuant to the provisions of chap. 737 of the Laws of 1873, and the acts amendatory thereof and supplemental thereto, brought this action for the purpose of obtaining a permanent injunction against the village of Skaneateles, its president, trustees and water commissioners (whom, for convenience, we shall refer to in the course of this opinion as the village), restraining them from constructing and operating in the village of Skaneateles an independent system of water works, for the purpose of supplying it and its inhabitants with water.

Such steps were taken on or about the 5th day of April, 1887, by the village of Skaneateles as, in conjunction with the acts of the plaintiff, operated to vest in the latter a franchise to maintain and operate within its corporate limits a system of water works for furnishing to the village and its inhabitants pure and wholesome water upon certain terms and conditions, which, in effect, were that the company should have its works in general operation by the 1st day of December, 1889; that it should not charge or collect at any time a greater sum than forty dollars per annum for each hydrant; that at such rate it should furnish all the hydrants required by the village, and should not sell or transfer to non-residents of Skaneateles the rights acquired by the granting of the franchise.    The works were not completed within the time provided for, but before the expiration of such period the trustees of the village of Skaneateles passed a resolution extending the time for the completion of the works until December 1st, 1890, and declared that thereby the franchise theretofore granted to the plaintiff was renewed.    Within the period of time designated by the latter resolution the works were com-

pleted and the plaintiff commenced to supply the village and its inhabitants with water and so continued under its contract for a period of about five years, at which time the contract with the village expired and was not renewed. Whether the record discloses the real reason for the refusal of the village to renew the contract is open to doubt, but the evidence indicates that the plaintiff having found that it had lost money, foolishly asked for ten dollars more per hydrant than it was entitled to charge under the terms of the grant by which the franchise was created. This was the first mistake, but not the only one in the chapter of errors which led to the appointment of a board of water commissioners in pursuance of chapter 181 of the Laws of 1875, who thereupon took the necessary steps to have a special election held for the purpose of voting upon the proposition to construct an independent system of water works for the village. The vote was largely in favor of an independent system, and the water commissioners proceeded at once to secure such a system. The situation presented to the water commissioners is described in the findings of the learned referee as follows: " The system of water works so constructed and completed as aforesaid, by plaintiff, was, and at all times since has been and now is, a complete and adequate system. Said corporation has laid pipes in substantially every street of said village ; no complaint has been made that the water furnished by said plaintiff has not been pure and wholesome, or that the sufficiency thereof has not been adequate, or that the pressure thereof has not been adequate for fire protection and all other purposes." They further say that the source from which the plaintiff obtained its water, namely, Skaneateles lake, was the only source from which water could be obtained for supplying and furnishing the village and its inhabitants with pure and wholesome water. Necessarily, therefore, it was apparent that the public health could not be advantaged by an additional system of water works, and that there were no public interests requiring it ; and as the statute under which the village was proceeding to acquire a system of water works

of its own permitted the acquisition of the plaintiff's water works, rights and franchises by condemnation proceedings, it would seem to the average mind that common fairness, if not common honesty, should have dictated that course. It is true that the village offered to pay to the plaintiff $24,000 for its property, a property mortgaged for $50,000, but the plaintiff declined to take that sum, and instead requested the defendant to take its property by condemnation proceedings, as the statute authorized. So anxious was the plaintiff to have that course taken, that it even offered to pay all the expenses of such a proceeding, except the defendant's counsel fees; but the village would not avail itself of the permission of the statute, or of the invitation of the plaintiff, and for an excuse for such an unconscionable performance says that it might have been compelled by a proceeding in court to pay to the plaintiff something more than the actual cost of duplicating its works; in other words, it feared that the court might hold that the franchise had some value, and that the money lost during the years required to educate the people up to the desirability of taking water should be compensated for.

It is the experience of all attempts to introduce water into villages and small cities that the number of individual patrons at the outset is very small, because their houses are not piped, and they are without bath tubs and other appliances which go with the use of water supplied under pressure. The houses erected after the construction of water works are, of course, made ready for connection with the pipes of the company; but the old houses are brought in very slowly; many never come in, while a small percentage of the others are brought in each year, as the owners find themselves able to enjoy the luxury afforded by the water system, or as they may be persuaded that the necessary expense ought to be incurred for reasons of health or comfort. This means in almost all cases losses for the first few years, until a sufficient number of people have become patrons to put the plant on a paying basis. The theory of the defendant seems to be that the proper way

21

to treat such a corporation as the plaintiff, promoted in this instance, as it appears, by defendant's citizens, is to let it go on and build water works, losing money each year while it educates the people up to the point of using the water, until years have passed away and the plant has at last come to a paying basis, and then duplicate its plant and take over a paying business for the simple cost of the construction of new works, and it claims the permission of the legislature to take that very course.

On the other hand, the appellant urges that the statute authorizing villages to supply themselves with water and permitting the acquisition of the works of any private corporations that may be supplying such municipalities with water, also makes it the duty of the water commissioners to acquire the property of the existing corporation or corporations. But after a very careful examination of the statute it seems to us very clear that this is not so.

It is probable that the legislature mistakenly assumed that such authorities would not act unjustly or oppressively, but would recognize the property rights of others. Be that as it may, the right to determine whether the property of an existing water works corporation should be taken or not, is clearly submitted to the determination of the local authorities. The refusal of the defendant, therefore, to acquire the plaintiff's property by proceedings *in invitum* does not tend to support the plaintiff's claim for an injunction. The defendant has done precisely what the statute authorizes, and all that remains for the court to determine is whether the act was within the legislative power, or void because in contravention of the organic law. Our first inquiry naturally is as to the nature of the rights acquired by the plaintiff under and by virtue of the franchise granted to it. The answer is readily to be found in the decisions of this court in *Syracuse Water Co.* v. *City of Syracuse* (116 N. Y. 167), and *Matter of the City of Brooklyn* (143 N. Y. 596). Indeed, the principle was settled in *Charles River Bridge* v. *Warren Bridge* (11 Peters, 548), where it appeared that the legislature of Massachusetts, after passing

an act incorporating the plaintiff for a term of years, with power to erect a bridge and collect the tolls, etc., subsequently incorporated the defendant with power to erect another bridge very near the first; the act provided that after the expense of the construction of the first bridge had been reimbursed to its promoters, it should be surrendered to the state and become a free bridge. It was insisted that the act incorporating the defendant impaired the obligation of the contract between the state and the plaintiff, and was, therefore, in violation of section 10 of the Constitution of the United States, providing that no state shall pass any law impairing the obligation of contracts. While the court was divided upon the question whether there could be implied from the contract on the part of the state an agreement not to authorize, contiguous to that of the Charles river bridge, another bridge, which would ultimately become free and thereupon render the plaintiff's bridge of little or no value, the majority of the court agreed that the contract between the state and the plaintiff was not exclusive, and that an agreement not to authorize the erection of another bridge could not be implied by reason of the settled rules of construction of statutes adopted under the system of jurisprudence which we have derived from the English law, viz.: that public grants are to be construed strictly so as to prevent rights from being taken from the public, or given to a corporation, beyond those which the words of the grant, by their ordinary construction, convey. The doctrine of that case has been accepted by this court and frequently applied, as in *Auburn & Cato Plank Road Co.* v. *Douglass* (97 N. Y. 444); *Chenango Bridge Co.* v. *Binghamton Bridge Co.* (27 N. Y. 87); *Power* v. *Village of Athens* (99 N. Y. 592); *Syracuse Water Co.* v. *City of Syracuse* (116 N. Y. 167), and *Matter of The City of Brooklyn* (143 N. Y. 596).

In the *Syracuse* case, the plaintiff was incorporated by chap. 234 of the Laws of 1849 for the purpose of furnishing water to the city and its inhabitants, and this it did from the time of its creation down to about the time of the commence-

ment of the action, which was brought for the purpose of restraining the defendant, the City of Syracuse, from granting to the Central City Water Company the right to place pipes and other constructions in the city of Syracuse with the view to supply it and its inhabitants with water. The plaintiff's charter provided that it should, when requested, furnish water to the common council of the city for the extinguishment of fires and other purposes, on terms to be agreed upon between them, and in case they should not agree, a provision was made for a determination of the disagreement by commissioners to be appointed by the Supreme Court; the charter also provided that any time after the expiration of the twenty years the common council should have the right to assume all the property rights, powers and franchises of the company on paying to it an amount to be ascertained by a method prescribed. For nearly forty years the Syracuse Water Company continued to furnish water for the city and its inhabitants, and then, in pursuance of chap. 85 of the Laws of 1880, the Central City Water Company was incorporated, and in its articles of incorporation the object of its creation was declared to be to supply the city of Syracuse and adjacent villages with pure and wholesome water for domestic use, for fire protection and other public purposes. The common council of the city thereupon adopted a resolution authorizing such company to construct and operate water works in the city of Syracuse for the purpose of supplying it and its inhabitants with water.

It was contended by the Syracuse Water Company in this court that the provision in the grant requiring the company on request to furnish water to the municipality, was in legal effect requiring the company to furnish and the city to take water for fire and other public purposes, but it was decided otherwise. The grant to the water company was held to give to it the privilege of supplying all the water that the city or its inhabitants might wish to take, but not with the right to supply them all the water that they might care to use.

The doctrine of that case was adopted and approved in *Matter of City of Brooklyn* (*supra*), which was a special pro-

ceeding instituted for the purpose of acquiring the property and franchises of the Long Island Water Supply Company. The commissioners of appraisal refused to hold that such company had an exclusive right to furnish water to the territory supplied by it. This position was sustained in this court on the ground that the franchise granted was not exclusive.

Under the settled law of this state, therefore, the franchise that the plaintiff here acquired was not exclusive and did not prevent the village from proceeding under the act of 1873, and the acts amendatory thereof, to grant a franchise to another corporation to construct water works in the village, and at the same time contract with it to take such water as the village should need for fire protection and other public purposes. Indeed, the appellant concedes this to be so, but at the same time insists that the attempt of the village to perform such service for itself presents a very different question, for while the effect of granting a franchise to another corporation might be to impair and possibly ultimately to destroy the value of its plant, the construction and operation of water works by the village, it is argued necessarily has that effect, because it takes away the power of the company to supply the village, the latter having placed itself beyond the necessity of being thus supplied; and the village having also undertaken the business of supplying its inhabitants, the power of the company to supply them is at least impaired, and, hence, it is urged that the obligation of its contract is impaired within the meaning of the Federal Constitution.

All franchises come from the state, although the legislature may, and often does, delegate to municipal authorities the right to take final action in the procedure resulting in the creation of a franchise. (*Ghee* v. *Northern Union Gas Co.*, 158 N. Y. 510, 513.) The effect of such action, if within the legislative permission, is to allow the grantee to carry on the business authorized by the franchise. All rights not expressly granted by it are, as we have seen, reserved. The rights thus reserved include in part the granting of a franchise to another corporation to carry on the same business in the

same territory. The power to grant the additional franchise, as well as the first one, the municipality acquires from the legislature, which has the power to determine whether the rights reserved upon the grant of the first franchise shall be exercised by a private corporation or by the municipal corporation. It may well be that competition by the municipality more seriously affects the earning capacity of the private corporation than would the competition of another private corporation; but the test of legislative power in such case is not whether the agency selected to construct and operate competing water works is effective or otherwise, but whether the statute providing for the agency also contains provisions assisting it to impair or destroy the property of the private corporation by other means than competition.

We are thus brought to an examination of the statutes, and our first inquiry will be whether they merely threaten parties in the plaintiff's situation with the consequences of local municipal competition, or constitute an invasion of their grants. The former, as we have seen, is permissible. But the latter may not be done; for the doctrine has been settled since the *Dartmouth College Case* (4 Wheat. 518), that a grant of corporate powers by the sovereign to an association of individuals for public use, constitutes a contract within the meaning of the Federal Constitution prohibiting a state legislature from passing laws impairing its obligations. In the recent case of *Pearsall* v. *Great Northern Ry. Co.* (161 U. S. 646), the court, after a brief review of the *Dartmouth College* case, said: "Subsequent cases have settled the law that wherever charter rights have been acquired by virtue of the corporate charter, such rights, so far as they are necessary to the full and complete enjoyment of the main object of the grant, are contracts, and beyond the reach of destructive legislation." Intermediate the cases cited there are many cases in the Supreme Court of the United States in which the doctrine referred to has been either asserted or made the basis for the decision, as in *N. O. Gas Co.* v. *Louisiana Light Co.* (115 U. S. 650); *N. O. Water Works Co.* v. *Rivers* (115 U. S. 674);

*Louisville Gas Co.* v. *Citizens' Gas Co.* (115 U. S. 683). These were cases where the grants were of an exclusive right to supply gas or water to a municipality. That court has taken frequent occasion to assert the inviolability of corporate charters in cases respecting the power of taxation, and in a series of decisions extending over many years has held that a clause in the contract imposing certain taxes in lieu of other taxes, or all taxes to which the stockholders would be subject, is impaired by legislation raising the rate of taxation or imposing taxes other than those specified in the charter. (*N. J.* v. *Wilson*, 7 Cranch, 164; *State Bank of Ohio* v. *Knoop*, 16 How. [U. S.] 369; *Dodge* v. *Woolsey*, 18 How. [U. S.] 331; *McGee* v. *Mathis*, 4 Wall. 143; *Farrington* v. *Tenn.*, 95 U. S. 679; *Asylum* v. *New Orleans*, 105 U. S. 362.)

In *People* v. *O'Brien* (111 N. Y. 1), the court at page 51 said : " An express reservation by the legislature of power to take away or destroy property lawfully acquired or created would necessarily violate the fundamental law, and it is equally clear that any legislation which authorizes such a result to be accomplished indirectly, would be equally ineffectual and void." That this contract is protected by the Constitution from destruction or impairment by legislation intended to accomplish that result either directly or indirectly, is established by the authorities to which reference has been made.

Whether the plaintiff's contract is impaired by the legislation under which the defendant has established its water works, will now be considered.

We have already said that such legislation was not in excess of the power of the legislature in so far as it granted to the villages of the state the right to construct and operate water works, notwithstanding the existence in such villages of a private corporation engaged in the same business, which obtained its franchise under the act of 1873. But the appellant contends that chapter 181 of the Laws of 1875 and the acts amendatory thereof and supplemental thereto, under which the defendant has proceeded to construct water works of its own, authorizes the village, as its competitor, to tax the plain-

tiff company in the event that the net water receipts are not sufficient to pay interest and principal as they become due. Thus it may be compelled to contribute towards the cost of the construction and maintenance of the water works of its competitor, and, in addition a system of water taxes is devised by which taxpayers who are customers of the plaintiff corporation may be discriminated against and thus compelled through self-interest to cease taking water from the plaintiff and take that of the defendant instead. Section 16 of the act provides : " In case the entire annual receipts for water rents, after deducting as in the preceding section provided, shall, in any year, not be sufficient to pay the interest for that year on said loans, or in case in any year when any of the principal of the loan secured by said bonds falls due, the amount of said receipts for water rents, after making said deduction, together with the sum in the said sinking fund, shall not be sufficient to pay said principal,  *  *  * "  shall " cause such deficiency to be assessed, levied and collected from the taxable property of said village  *  *  *."  By chapter 507 of the Laws of 1889 authority was conferred upon the boards of water commissioners, acting under chapter 181 of the Laws of 1875, to establish a scale of water rates for the use of water, also rates to be assessed upon all real property abutting on the streets where the water pipes are laid. This section was amended by chapter 662 of the Laws of 1893, so as to authorize boards of water commissioners to " establish a scale of rates for the use of water and also rates for fire protection to be assessed on all real property abutting on the mains or within two hundred feet of the hydrants, the owners or occupants of which do not use the water for domestic or manufacturing purposes." By chap. 284 of the Laws of 1894 it was further amended, so as to read as follows : " Boards of water commissioners  *  *  * may establish a scale of rates for the use of water and also rates for fire protection, to be assessed on all real property abutting on the mains or within two hundred feet of the hydrants, or on such real property so abutting, or within such distance, as such boards may deem beneficial, upon which real

property the water is not used by the owners or occupants thereof for domestic or manufacturing purposes."

It is difficult to conceive of a more ingenious and effective device to deprive the plaintiff of its customers than the provision of the statute which we have just quoted. The development of the law upon that subject is interesting, but we shall not stop to discuss it, as the provisions we have quoted seem to make their own comment.

The provision of the act of 1894 had become incorporated into the act of 1875, before this defendant organized and proceeded in the construction of its works under the latter act. By it we perceive the water commissioners are authorized to "establish a scale of rates for the use of water, and also rates for fire protection, to be assessed upon all real property abutting on the mains or within two hundred feet of the hydrants," or the commissioners may ignore such limitations altogether and create others which may, if they so determine, coincide with the corporate limits, and further they may confine the assessment to real property upon which the water is not used by the owners or occupants thereof for domestic or manufacturing purposes; for the statute provides as an alternative or a substitute for an assessment on all real property abutting on the mains or within two hundred feet of the hydrants, that an assessment may be made " on such real property so abutting or within such distance as such boards may deem beneficial, upon which real property the water is not used by the owners or occupants thereof for domestic or manufacturing purposes." Who can doubt that a board of water commissioners that would refuse to take such a plant as the plaintiff's by proceedings *in invitum*, and thereby necessarily at its fair valuation, would not hesitate to make use of the discretion so broadly conferred, in order to secure all of the patrons of the private company, or that they would find it at all difficult to determine that it would be " beneficial " to assess a large part of the cost of fire protection upon the inhabitants who had opposed their plan as destructive of property and wasteful, and had continued to take water from the private

corporation as a matter of principle? And, again, who can doubt that the villagers would expect to be discriminated against should they refuse the request of canvassers to become customers of the board of water commissioners? An attempt to exercise the authority sought to be conferred by this provision of the statute would necessarily deprive a private corporation of all its customers, and, as a result, the business of such corporation would be absolutely destroyed, a business which the law assured it at the time of its incorporation should not be interfered with otherwise than by competition.

If the provisions of the statute authorizing the taxation of the plaintiff for the payment of the obligations incurred in the construction of the defendant's water works, and the provision authorizing a discriminating tax against its patrons are so connected with the purpose of the act and the object in view that it cannot be said that they do not constitute an essential part of the scheme of the act, then it should be held to be in contravention of section 10 of the Federal Constitution and void. It is, however, a well-settled principle of construction that where the void provisions are separable from those that are lawful, and those that remain are capable of being executed, the valid provisions will not be condemned because of the unconstitutionality of other provisions not absolutely essential to the main purpose of the act. (*Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540, 554, and cases cited.) It is obvious that the offending provisions do not constitute essential feature of the act of 1875, as amended. Indeed, the discriminating feature of the act of 1894 did not become incorporated into the original act until nearly nineteen years after its passage, and the elimination of that feature of the statute will in nowise interfere with the just and proper working out of the general purposes of the act, which is to enable municipalities to provide for an independent system of water works, to be owned and controlled by the municipal authorities. Neither is it an essential part of the scheme that the plaintiff's property should be taxed to pay for the construction and maintenance of the defendant's water works.

Abundant resources are provided for the working out of the plan for paying for the property and the cost of its operation, without assessing the property of the plaintiff for such purposes, and we are of the opinion that in view of the public interests involved (for many municipalities have constructed independent water works under this statute) the rule should be invoked which authorizes the elimination of the provisions of a statute which, if allowed to remain, would condemn it, where it can be done without interference with the general plan and scope of the act.

The judgment should be affirmed, with costs.

BARTLETT, J. (dissenting).   In this action the plaintiff sues in its own right, and not as a taxpayer of the village.

The legal questions involved are of great general importance and affect a very large amount of invested capital.

The argument, as set forth in the able briefs of counsel on both sides, has taken a wide range, but in my opinion there is one controlling question that is decisive of this case.

In order to state this question intelligently, a reference to the legal situation is important.

In 1873, the legislature enacted the general law for the formation of water companies. (Laws 1873, chap. 737.)   That act has been amended from time to time (particularly Laws 1885, chap. 422).

The policy of this legislation has a most important bearing on the question under consideration.   While the statute of 1873 is in form a general law authorizing the formation of water companies, it contains a limitation that permits the organization of a corporation thereunder only when the local authorities of the village interested have given their consent.

In 1875 (Chap. 181), the legislature passed a law authorizing the villages of the state to furnish the municipalities and their inhabitants with pure and wholesome water.

This statute provides, in detail, how a village may organize and conduct a corporation and water system of its own.

It further provides (§ 22) that if it shall become or be

deemed necessary by the board of water commissioners, they may institute condemnation proceedings to acquire the rights, privileges, grants and properties of an existing corporation.

This is optional with the village authorities only, and the existing company has no power to compel the water commissioners to purchase or condemn its rights and property.

In 1887 the trustees of the village of Skaneateles, as authorized by the act of 1873, as amended, granted to the plaintiff company the consent or franchise to perfect its organization and supply the village and its inhabitants with water.

In 1889 the works were completed and the plaintiff entered upon the performance of its corporate duties.

In 1896 proceedings were instituted which resulted in the village of Skaneateles availing itself of the provisions of the act of 1875 (Chap. 181), and it is now conducting a corporation and water system of its own.

The municipal company failed to avail itself of the right to acquire the property of the old company under condemnation proceedings. In this case, as in many others, the old company has ceased to pay expenses, and it is only a question of time when its bonds and stock will be worthless. Before considering the legal position of the village under the state of facts disclosed by this record, it may be well to inquire as to the legitimate risks assumed by the incorporators of the plaintiff at the outset.

I am of the opinion that the plaintiff did not acquire an exclusive right, under the act of 1873, to supply water to the village of Skaneateles and its inhabitants. (*Matter of City of Brooklyn*, 143 N. Y. 596.) I think the plaintiff took the risk of the village authorities, at any future time, granting permission to private parties to form another water company and allowing it to furnish water to the municipality for public use as well as to the inhabitants.

If there is no exclusive right in the plaintiff, and if the village is free to permit the formation of as many corporations by private parties as they deem proper, we have a situation where the freest competition is permitted and no monopoly exists.

All who embark in business ventures are bound to consider in advance that their investment of capital is subject to the peril of close and oftentimes successful competition. The vice of monopoly is that it escapes competition to the detriment of the consumer.

We come then to the controlling question in this case. Is it competent for the legislature to authorize a village to organize a water company of its own to furnish water for private and public use when its trustees have previously granted a consent, or franchise, for a private corporation to do the same thing, without requiring the village either by purchase, or condemnation proceedings, to acquire the rights and property of the old company?

I am of opinion that the legislature has no such power, and the act of 1875 is, in that respect, unconstitutional as depriving the plaintiff of property without just compensation or due process of law and denying to it the equal protection of the laws.

It seems very clear that a municipal corporation, standing in the position of the village of Skaneateles in this record, cannot engage in the business of furnishing water to itself and its inhabitants and drive the corporation that was organized by its consent to do the same business, into bankruptcy.

If this was accomplished by fair and legal competition that would be the end of the matter, as no valid objection could be made. The foundation of the argument to the contrary is that the municipality does not stand on an equal footing with the old company and invite it to fair and open competition.

In the first place it controls its own patronage as to furnishing water for public use, which is a considerable source of revenue to the existing company.

The latter, if competing with a new private company in this regard, would have an equal opportunity of obtaining the contract from the village as it would go to the lowest bidder, but not so where the latter organizes a company.

Again, the village has the power to impose a tax upon the

property of the existing company as a taxpayer to raise a fund to build the plant of the municipal corporation and to make good from time to time any deficit in the conduct of its business.

Furthermore, the village has the power to establish a scale of rates for the use of water, and also rates for fire protection to be assessed on all real property abutting on the mains or within two hundred feet of the hydrants, the owners and occupants of which do not use the water for domestic or manufacturing purposes. (Laws 1889, chap. 507, as amended by Laws 1893, chap. 662.) Any patrons the old company retains will be driven at once into the municipal company by this tax. This assessment of rates for fire protection was properly designed to compel the non-consumer to contribute for benefits and protection enjoyed, but it will incidentally require the patrons of the old company to associate themselves with its municipal successor.

In view of the facts as stated, it is obvious that the municipal water company is in no legal sense the ordinary competitor of the old company, but is armed with powers that will inevitably drive the latter from the field, and its bondholders and stockholders be subjected to a total loss of all capital invested. This is not competition — it is annihilation.

As before stated, this litigation affects a very large amount of invested capital, aside from the case at bar, and the question is whether a court of equity is powerless to prevent the utter destruction of this property, or can it invoke legal principles which will do justice between the parties.

It seems to me that there is but one course to be pursued ; the property of the old company should be purchased by private contract or condemned under the statute before the municipal water company is permitted to begin work on its plant.

When the town of New Lots was annexed to the city of Brooklyn, the latter was prohibited from supplying water to the territory included in the town until the expiration of the charter of the water company, or until the city should pur-

chase or acquire its property. (Laws of 1886, chap. 335, § 4.) The course suggested is the only one that can even approximate justice in the situation now presented. The old company, with a large bonded indebtedness that has been increased by reason of losses incurred during the early years of the venture, is sure to suffer financially even after a fair and honest condemnation proceeding.

In the case before us the old company first undertook the task of supplying a country village with water and encountered the usual experience of the few taking it and the many refusing it. The general, popular appreciation of the fact that a water company offers for a comparatively small sum of money an abundant supply of pure and wholesome water for domestic and sanitary purposes, is a matter of slow growth in a small country village, and the capitalists who embark in the enterprise suffer losses at the outset.

It is simple and obvious justice that the municipal corporation, before availing itself of the work and losses of the pioneer company, should acquire its property by purchase or condemnation proceedings. To hold that one of the powers the legislature has placed in the hands of the village, by which the plaintiff has been partially destroyed, is unconstitutional, avails nothing when others equally potent are allowed to stand to the utter destruction of the old company.

There is nothing in precedent, as I read the cases, to prevent a court of equity from granting relief in that large class of cases, of which this is one.

I vote for reversal.

All concur with PARKER, Ch. J., for affirmance, except BARTLETT, J., who reads dissenting opinion, and HAIGHT, J., not voting.

Judgment affirmed.