(86 Misc. Rep. 670)

PEOPLE ex rel. URBAN WATER SUPPLY CO. v. CONNOLLY, Borough President.

(Supreme Court, Special Term, Queens County. August, 1914.)

1. WATERS AND WATER COURSES (§ 200*)—WATER COMPANIES—CONTRACT FOR WATER SUPPLY.

Since a contract, between a corporation organized under the Transportation Corporations Law (Consol. Laws, c. 63) to supply water to the town of North Hempstead and the city of New York, for delivery by the corporation into the mains of such city, in the vicinity of a pumping station in the First ward of the borough of Queens, of a specified amount of water, was not a contract within Transportation Corporations Law, § 85, providing that a waterworks corporation may, by filing an amended certificate, contract with cities other than those mentioned in its certificate of incorporation, the filing of an amended certificate could not confer upon the corporation any further or additional franchises or rights.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

2. WATERS AND WATER COURSES (§ 200*)—PROCUREMENT OF TEMPORARY PUBLIC WATER SUPPLY.

Greater New York Charter (Laws 1901, c. 466) §§ 471, 472, 1618, Laws 1905, cc. 724, 725, Laws 1906, c. 314, and Laws 1907, c. 438, vest the city of New York with full power to contract to procure by purchase or otherwise an additional water supply for temporary and emergency use.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

Application for writ of mandamus by the People, on the relation of the Urban Water Supply Company, against Maurice E. Connolly, as President of the Borough of Queens, City of New York. Application denied.

Clarence J. Shearn, of New York City, for relator.
Frank L. Polk, Corp. Counsel, of New York City (Edward S. Malone and William E. C. Mayer, both of New York City, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

VAN SICLEN, J. The relator makes application for a writ of mandamus, peremptory or alternative, directed to the respondent as president of the borough of Queens, requiring him to issue a permit to open certain streets in the borough of Queens, and particularly in the First ward thereof (formerly Long Island City), for the purpose of laying pipes and mains for delivering and distributing water to the city of New York and the inhabitants of the borough of Queens.

It appears from the papers submitted that the relator is a corporation organized under the Transportation Corporations Law (Consol. Laws, c. 63) for the purpose of supplying water. The name of the town which it proposed to supply with water was specified in the certificate of incorporation as the town of North Hempstead, county of Nassau. After incorporation the relator by purchase became the successor of the franchises of the Woodside Water Company, which was incorporated to supply water to the old town of Newtown, now Second ward, borough of Queens, and the relator now has its source of supply located in said Second ward of the borough of Queens. It also appears from the papers submitted that said Woodside Water Company sought prior to the consolidation to enter the First ward, then Long Island City, but was prevented from so doing by an injunction order of this court. So far as this court is able to ascertain from the affidavits herein, neither the relator nor its predecessor had ever laid any water mains or pipes in the First ward (formerly Long Island City) of the borough of Queens, prior to a certain contract made by and between the relator and the city of New York and which was executed on the part of the city of New York, as respondent contends, according to the provisions and requirements of section 471 of the city charter (Laws 1901, c. 466), in August, 1911.

There seems to be no dispute as to the power or authority of the parties thereto, entering into the contract in question, which was for the delivery by the relator, into the mains of the city of New York in the vicinity of the city's pumping station No. 1 in the First ward (formerly Long Island City) in the borough of Queens, of a certain amount of water as therein specified and upon the same terms and conditions in said contract contained. Further, there is no dispute as to the laying by the relator of the delivery main from the other mains of the relator in the Second ward and connected with the existing mains of the city in the vicinity of the city's pumping station No. 1, in the First ward, and that the relator delivered water during the life of the contract into the said city main and did nothing else, and that on the termination of the contract the controlling gate was closed and has since so remained. This court is unable to find from the papers submitted that the relator has ever laid any other water mains or pipes in the First ward, or that it has ever supplied any inhabitants of the First ward with water delivered through any such pipes or mains, or that it has supplied any water to the First ward except what was sold and delivered to the city of New York under said contract of August, 1911. It appears, further, from a letter annexed to the answering affidavits, written by the relator about the time of the expiration or termination of said contract, that relator

requested the favor of the city of having its said delivery main and connections remain as installed, at least temporarily, to meet any emergency demand which might arise, so that upon the request of the city the relator might be able to furnish such supply of water as the city might desire. It seems clear, therefore, that at the time of the termination of the contract the relator made no claim whatever of any rights now asserted.

After entering into said contract with the city in August, 1911, the relator in October of 1911, pursuant to the provisions of section 85 of the Transportation Corporations Law, duly filed an amended certificate wherein it recited that said relator had entered into a contract with the city of New York, said city not being the city, town, or village mentioned in its certificate of incorporation, and now claims by reason of said amended certificate, and also by reason of the provisions of the Transportation Corporations Law, said amended certificate of incorporation having been based on the said temporary contract to sell water to the city of New York, obtained from the state of New York the franchise and right to supply inhabitants of the borough of Queens and the city of New York with water, and that by reason thereof the relator is entitled to and has the legal right to compel the respondent to issue a permit to open certain streets in the borough of Queens for the purpose of laying pipes and mains for delivering and distributing water to the city of New York and the inhabitants of the borough of Queens. By this application the court is now compelled to pass on the nature of the alleged additional franchise and rights, if any, claimed by or which may belong to the relator by virtue of the filing of the said amended certificate of incorporation as hereinbefore set forth.

The respondent contends that while the immediate purpose of the relator's application is to procure permits to open streets in the First ward of the borough of Queens, so that it may lay its water mains therein, the real object of the application is to obtain the sanction of this court for, and to uphold the relator's contention that it has under said amended certificate of incorporation, based only on the temporary contract aforesaid, a perpetual franchise to supply the inhabitants of Queens county and the city of New York with water, such franchise being extinguishable only by condemnation; and, further, what the relator now seeks herein has heretofore been prevented and rejected by an injunction order of this court and possibly by failure of recently attempted legislation.

[1] As the relator claims certain rights which it now asserts, by reason of the said contract with the city of New York and the amended certificate of incorporation as thereafter filed, and by reason of the provisions of the Transportation Corporations Law, it seems that the first question to be decided by this court is whether the contract in question, entered into by and between the relator and the city of New York in August, 1911, comes within the terms of section 85 of the Transportation Corporations Law; for if it be found that said contract was not within the meaning and intent of said section 85 of the Transportation Corporations Law then it follows that there

accrued to the relator no right to or necessity for the filing of the amended certificate of incorporation, and consequently no franchises or rights which are now asserted by the relator were bestowed upon or possessed by it.

[2] A careful reading of sections 471, 472, and 1618 of the city charter, and chapters 724 and 725, Laws of 1905, chapter 314, Laws of 1906, and chapter 438, Laws of 1907, seems to disclose that it was the evident intent of the Legislature to vest in the city of New York, acting by and through the authorities therein designated, full authority and power to enter into such a contract as was entered into by and between the relator and the city of New York in August, 1911, namely, to procure by purchase or otherwise additional water supply for temporary and emergency use, and, conceding that the city had legal authority to enter into and make such temporary contract under the charter, there was no necessity for the filing of an amended certificate by the relator and the filing thereof could not thereby confer upon the relator any further or additional franchises or rights. Assuming that the section of the city (First ward, borough of Queens) thereby affected had been fully supplied with water by the city itself, or by a private water company other than the relator, and that only an additional supply was then required for temporary and emergency use, it is obvious that the city authorities under the charter could not, by entering into the contract in question with the relator, do an act which would result to the detriment of the private water company or commit what in substance would amount to self-ouster.

Further, it appears from a careful reading of said section 85 of the Transportation Corporations Law that what is intended thereby is to give to such corporation as therein mentioned the right to supply water in the manner therein designated, and if such right be applied to the contract in question it seems clear that the intent of the contract was not the supplying or furnishing of water by the relator, but simply and solely to establish the relation of vendor and vendee, whereby the relator, as vendor, sold and delivered to the city, as vendee, a certain quantity of water upon the terms therein specified and the relator acquired thereby no franchise or even license, but only permission and approval as to the form and manner of delivery of the commodity sold. The contract may as well have specified the mode of delivery, at and into a reservoir of the city, or by connection with the city's mains at the division line between the First and Second wards of the borough of Queens, or the manner and form of delivery might as well have been designated in, tanks or casks. By the terms of the contract itself the commodity thus purchased was supplied and furnished and distributed by the vendee, the city of New York, and not by the relator. The relator, therefore, thereby acquired no additional franchises or rights under or by reason of said section 85 of the Transportation Corporations Law, and the contract itself expressly prohibits and guards against the same. Thus it appears that if the relator obtained any right at all, whether designated as a franchise or otherwise, it was only temporary, and not such a right or franchise as now claimed by the relator. Under the authorities ap-

plicable, the relator obtained only what was expressly given by contract, nothing by inference, and whatever it got, however the same may be designated, terminated with the contract, not only by the terms of the contract itself, but under the statute and by the conduct of the relator itself in the matter, evidenced by its acquiescence and withdrawal. See Skaneateles Water Co. v. Village of Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585, affirming 161 N. Y. 154, 55 N. E. 562; Western Union Telegraph Co. v. Syracuse El. L. & P. Co., 178 N. Y. 325, 70 N. E. 866; Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546; People ex rel Woodhaven Gaslight Co. v. Deehan, 153 N. Y. 528, 47 N. E. 787; Richmond County Gas L. Co. v. Town of Middletown, 59 N. Y. 228.

The matter at issue may be summarized as follows: (1) If the filing of the amended certificate of incorporation by the relator was unnecessary for the validity of the contract with the city, then the filing thereof was a mere voluntary, or, at the most, a problematical, self-serving act by the relator; and (2) if said filing was necessary to impart force and virtue to said contract, then for the reasons hereinbefore recited and under the statute and authorities no franchise or right accrued to relator until a duty was imposed upon it, and no duty could be imposed until the municipality evidenced its desire by request, demand, and necessity to obtain a water supply from the relator, and thereby, and only then, and by offering permit, would it have a right to thus supply, or would a duty to do so be imposed on relator.

If what the relator now claims and asserts is a fact, it has the legal right or franchise, without request or demand by the city, to supply the whole city of New York with water, or at least the right or franchise to enter the whole of Queens borough and to supply the inhabitants thereof with water. As has been hereinbefore shown, the relator's claim not only fails to find support under the statute and authorities, but from the conduct of the relator itself, by making no protest or asserting no claim at the time of the termination of the contract in question, having waited for almost one year after its acquiescence and withdrawal before taking any steps to assert or enforce a claim or right, which, if granted by this court, would not only result in great benefit to the relator, but also to great loss and immense disadvantage to the city of New York.

The court, therefore, is forced to hold that the relator is not entitled to a peremptory writ of mandamus, and as no material facts are disputed no alternative writ should issue. The motion of the relator is denied, with costs.

Motion denied, with costs.