James J. Crisona, J.
In this action brought by plaintiff to restrain defendants from carrying out an agreement whereby the defendant City of New York would furnish water to the defendant Bochdale Village, Inc., plaintiff now moves for a temporary injunction.
Plaintiff is a waterworks corporation organized in 1887 pursuant to chapter 737 of the Laws of 1873, and various acts amendatory thereof, to supply water to the Incorporated Village of Jamaica and the inhabitants thereof.
In 1898, due to the consolidation and creation of the Greater City of New York, the eastern portion of plaintiff’s franchise area remained part of the Towns of Hempstead and North Hempstead in the new County of Nassau and the westerly portion thereof became part of the Borough of Queens of the City of New York.
*206 Plaintiff supplies water for domestic, commercial and public purposes throughout its franchise area, a territory of about 40 square miles, servicing approximately 600,000 inhabitants, many industries employing thousands of persons and several municipalities in the Nassau County portion of such territory.
Plaintiff has continuously exercised its franchise throughout the permitted area and is performing its contracts with the defendant city. Its tariff schedule is on file with the Public Service Commission as required by statute.
Within its franchise area lie the premises formerly known as Jamaica Race Track, which premises are now owned by the defendant Rochdale. Said defendant is in the process of building a large development containing about 6,000 apartments which will house approximately 25,000 persons.
Prior to October 8, 1957, in anticipation of the need for additional water requirements for the Rochdale development, plaintiff purchased a large plot of ground adjacent to Rochdale development and constructed thereon a 4,000,000 gallon storage tank at a cost to the plaintiff of $463,287.35 and plaintiff has scheduled construction of additional facilities and distribution systems at an estimated cost of $15,000,000.
On March 9, 1961, defendant Rochdale applied to the Water Power and Control Commission (now Water Resources Commission) for authority to install an independent water supply system consisting of five shallow wells with a total capacity of 2,500 gallons per minute or 3,600,000 gallons per day to provide a supply of water for its 25,000 expected inhabitants and also for other buildings that were planned, such as schools, shopping centers, garages and the like.
On April 13,1961, plaintiff filed objections to defendant Rochdale’s petition. A hearing scheduled for April 18, 1961, was adjourned and subsequently plaintiff’s president met with Rochdale’s president for a conference. Rochdale wanted water at the lowest possible rate and insisted upon “ conjunctional billing.” Plaintiff’s tariff regulations contained no such provision, but plaintiff agreed to apply to the Public Service Commission for such authority if Rochdale filed an application for service on such a basis.
On June 5, 1961, plaintiff received such an application from Rochdale. On July 21, 1961, plaintiff filed amendments to its tariff schedule with the Public Service Commission in order to comply with the terms requested by Rochdale. On August 9, 1961, the Public Service Commission suspended plaintiff’s proposed amendments pending a hearing and determination. A public hearing was held on October 4, 1961. The matter is still pending, undetermined, before the Public Service Commission.
*207 Meanwhile, plaintiff prepared plans for a pipe layout which would result in furnishing all of Rochdale’s water through one meter. This plan was submitted to Rochdale’s attorneys on February 6, 1962, but it appears that they made no response thereto. On or about April 5,1962, Rochdale withdrew its application to the Water Resources Commission for permission to sink its own wells.
On September 27, 1962, the Board of Estimate of the City of New York adopted a resolution approving forms of contracts, plans and specifications for hauling and laying water mains in various streets in the Borough of Queens in plaintiff’s franchise area at an estimated cost of $263,900 (not including the cost of pipe). Of this sum, $250,000 was to be paid by defendant Rochdale in five annual installments of $50,000 each, plus interest, as evidenced by Rochdale’s promissory note.
Plaintiff contends that the resolution adopted by the Board of Estimate indicates the defendant city’s intention to parallel plaintiff’s existing water mains with consequent loss of revenue to the plaintiff. Plaintiff further claims that Rochdale’s efforts to obtain its water requirements from the defendant city constitute an attempt to induce the city to breach its contract with the plaintiff. Plaintiff argues that the acts of both the city and Rochdale are illegal in various respects.
At the outset, it must be noted that plaintiff’s franchise was not an exclusive one. This is conceded by the plaintiff, as indeed it must be, since similar franchises granted under the same act of 1873 have been so interpreted by the New York Court of Appeals and by the United States Supreme Court. (Skaneateles Water Works Co. v. Village of Skaneateles, 161 N. Y. 154, affd. 184 U. S. 354.) In that case, it was held that there is no implied contract, in an ordinary grant of a franchise, that the grantor will never do any act by which the value of the franchise may be reduced.
McQuillin, in his work Municipal Corporations (3d ed., vol. 12, § 35.13), states that unless a municipality has granted an exclusive franchise or has entered into a valid contract not to compete, it may construct a competing water plant even though the competition may be ruinous, in the absence of special statutes requiring it to purchase the plant of an existing company or otherwise restricting competition.
Dillon, in his Municipal Corporations (5th ed., vol. 3, § 1308, p. 2160), states: “When a public service corporation has received a grant of the right to construct its works and to use the city streets in connection therewith which is not expressly *208 stated or does not plainly appear to be exclusive, it thereby acquires no exclusive franchise or right under which it can prevent any other corporation or the municipality itself from exercising similar privileges. The mere grant of a franchise by a municipality does not of itself imply a contract that the grantor will not do any act to interfere with the rights granted to the water works.”
In the light of these authorities, it would appear that plaintiff has no basis for a temporary injunction.
Plaintiff argues, however, that certain statutes which were not in existence at the time of the Skaneateles case require a different holding today.
Plaintiff’s first argument is that Rochdale’s note for $250,000 violates section 1 of article VIII of the New York State Constitution which prohibits a city from making a loan. Plaintiff claims that every note evidences a loan. In the instant case, however, the city did not lend any money to Rochdale. On the contrary, Rochdale is contributing $250,000 to the cost of the construction of the water system. Such contribution does not become a loan merely because it is payable over a five-year period and is evidenced by a note.
Plaintiff also contends that Rochdale’s contribution violates various sections of the Private Housing Finance Law. A mere reading of the sections involved indicates that there is no merit to this argument.
Plaintiff then quotes a portion of section 89-e of the Public Service Law which provides as follows: “ No main or conduit of an existing water supply company shall be paralleled or duplicated unless and until there shall have first been obtained a certificate of convenience and necessity from the commission.” But section 89-1 specifically provides that the above-quoted section is not applicable to a municipality.
Plaintiff next cites subdivision (1) of section 450 of the Conservation Law to the effect that a public corporation (which includes the defendant city) may not exercise its franchise to supply water until the Water Resources Commission has approved the maps and plans. This section likewise is not applicable to the instant case because subdivision (2) of the same section specifically provides: ‘ ‘ Approval by the Water Resources Commission shall not be necessary of any plans or work for the extension of supply or distributing mains or pipes of a municipal water supply plant into and for the purpose of supplying water in any territory within the limits of the municipality owning such plant, including territory which has not been heretofore supplied with water by such plant.”
*209 It appears that the Skaneateles case is still controlling here and that none of plaintiff’s constitutional rights has been infringed. (Cf. Jamaica Water Supply Co. v. City of New York, 304 N. Y. 917, 305 N. Y. 560, cert, denied 346 U. S. 821.)
The motion for a temporary injunction is denied and the stay contained in the order to show cause is vacated.