Charles Margett, J.
Plaintiff brought this action for a judgment declaring a certain agreement between the defendant City of New York and the defendant Rochdale Village, Inc., to be unconstitutional, illegal and void. By the terms of said agreement, the defendant city would furnish water to the defendant *867 Rochdale. Plaintiff also asks that the defendants he restrained from taking any action to implement or perform said agreement. The theory of plaintiff’s action is that the aforesaid agreement and the acts contemplated thereunder would constitute a breach of plaintiff’s franchise.
Defendants by two separate notices of motion now move for summary judgment dismissing the complaint. Plaintiff, in its opposing papers, asks for similar relief in its favor, or, in the alternative, for an immediate trial of the action, or, in the further alternative, for a temporary injunction.
A prior motion by the plaintiff for a temporary injunction was denied by Mr. Justice Crisola and plaintiff’s appeal from the order entered thereon is now pending in the Appellate Division. Obviously, this court may not review the order of another Justice of co-ordinate jurisdiction and plaintiff’s alternative request for a temporary injunction must be denied.
Since all parties have requested summary judgment and there is no dispute concerning the facts herein, it is apparent that plaintiff’s motion for a preference will become academic upon the determination of the motions for summary judgment. Accordingly, plaintiff’s motion for a preference is denied as academic.
Plaintiff is a waterworks corporation organized in 1887 pursuant to chapter 737 of the Laws of 1873 and acts amendatory thereof, to supply water to the inhabitants of the Incorporated Village of Jamaica. Its franchise area lies partly in Queens County and partly in Nassau County.
Plaintiff has continuously exercised its franchise throughout the permitted area and is currently performing its contracts with the defendant city. Its tariff schedule is on file with the Public Service Commission as required by statute.
Defendant Rochdale Village, Inc., is a limited-profit housing company incorporated in 1960 under article 12 of the Public Housing Law (now article 2 of the Private Housing Finance Law) to build a co-operative housing project for persons of low or moderate income. The project consists of 20 14-story apartment buildings containing about 6,000 apartments which will accommodate some 25,000 persons. It is located on a plot of 130 acres which was formerly the site of the Jamaica Race Track and which lies within plaintiff’s franchise area.
The facts underlying this action and some of the points of law involved herein were so clearly and succinctly set forth by Mr. Justice Crisola in his decision on plaintiff’s motion for a temporary injunction that portions of his opinion (38 Misc 2d 205) will be incorporated herein at this point.
*868 “ Prior to October 8, 1957, in anticipation of the need for additional water requirements for the Rochdale development, plaintiff purchased a large plot of ground adjacent to Rochdale development and constructed thereon a 4,000,000 gallon storage tank at a cost to the plaintiff of $463,287.35 and plaintiff has scheduled construction of additional facilities and distribution systems at an estimated cost of $15,000,000.
“On March 9, 1961, defendant Rochdale applied to the Water Power and Control Commission (now Water Resources Commission) for authority to install an independent water supply system consisting of five shallow wells with a total capacity of 2,500 gallons per minute or 3,600,000 gallons per day to provide a supply of water for its 25,000 expected inhabitants and also for other buildings that were planned, such as schools, shopping centers, garages and the like.
“ On April 13, 1961, plaintiff filed objections to defendant Rochdale’s petition. A hearing scheduled for April 18, 1961, was adjourned and subsequently plaintiff’s president met with Rochdale’s president for a conference. Rochdale wanted water at the lowest possible rate and insisted upon ‘ conjunctional billing. ’ Plaintiff’s tariff regulations contained no such provision, but plaintiff agreed to apply to the Public Service Commission for such authority if Rochdale filed an application for service on such a basis.
“ On June 5, 1961, plaintiff received such an application from Rochdale. On July 21, 1961, plaintiff filed amendments to its tariff schedule with the Public Service Commission in order to comply with the terms requested by Rochdale. On August 9, 1961, the Public Service Commission suspended plaintiff’s proposed amendments pending a hearing and determination. A public hearing was held on October 4, 1961. The matter is still pending, undertermined, before the Public Service Commission.
‘ ‘ Meanwhile, plaintiff prepared plans for a pipe layout which would result in furnishing all of Rochdale’s water through one meter. This plan was submitted to Rochdale’s attorneys on February 6, 1962, but it appears that they made no response thereto. On or about April 5, 1962, Rochdale withdrew its application to the Water Resources Commission for permission to sink its own wells.
“ On September 27, 1962, the Board of Estimate of the City of New York adopted a resolution approving forms of contracts, plans and specifications for hauling and laying water mains in various streets in the Borough of Queens in plaintiff’s franchise area at an estimated cost of $263,900 (not including the cost *869 of pipe). Of this sum, $250,000 was to be paid by defendant Rochdale in .five annual installments of $50,000 each, plus interest, as evidenced by Rochdale’s promissory note.
“ Plaintiff contends that the resolution adopted by the Board of Estimate indicates the defendant City’s intention to parallel plaintiff’s existing water mains with consequent loss of revenue to the plaintiff. Plaintiff further claims that Rochdale’s efforts to obtain its water requirements from the defendant City constitute an attempt to induce the City to breach its contract with the plaintiff. Plaintiff argues that the acts of both the City and Rochdale are illegal in various respects.
“At the outset, it must be noted that plaintiff’s franchise was not an exclusive one. This is conceded by the plaintiff, as indeed it must be, since similar franchises granted under the same Act of 1873 have been so interpreted by the New York Court of Appeals and by the United States Supreme Court. (Skaneateles Water Co. v. Skaneateles, 161 N. Y. 154, affd. 184 U. S. 354.) In that case, it was held that there is no implied contract, in an ordinary grant of a franchise, that the grantor will never do any act by which the value of the franchise may be reduced.
* * *
11 Plaintiff argues, however, that certain statutes which were not in existence at the time of the Skaneateles case require a different holding today.
“ Plaintiff’s first argument is that Rochdale’s note for $250,-000 violates Article VIII, section 1, of the New York State Constitution which prohibits a city from making a loan. Plaintiff claims that every note evidences a loan. In the instant case, however, the City did not lend any money to Rochdale. On the contrary, Rochdale is contributing $250,000 to the cost of the construction of the water system. Such contribution does not become a loan merely because it is payable over a five-year period and is evidenced by a note.
“ Plaintiff also contends that Rochdale’s contribution violates various sections of the Private Housing Finance Law. A mere reading of the sections involved indicates that there is no merit to this argument.
“ Plaintiff then quotes a portion of section 89-e of the Public Service Law which provides as follows: ‘ * * * No main or conduit of an existing water supply company shall be paralleled or duplicated unless and until there shall have first been obtained a certificate of convenience and necessity from the commission. ’ But section 89-1 specifically provides that the above-quoted section is not applicable to a municipality.
*870 “ Plaintiff next cites subdivision (1) of section 450 of the Conservation Law to the effect that a public corporation (which includes the defendant City) may not exercise its franchise to supply water until the Water Resources Commission has approved the maps and plans. This section likewise is not applicable to the instant case because subdivision (2) of the same section specifically provides: ‘ Approval by the Water Resources Commission shall not be necessary of any plans or work for the extension of supply or distributing mains or pipes of a municipal water supply plant into and for the purpose of supplying water in any territory within the limits of the municipality owning such plant, including territory which has not been heretofore supplied with water by such plant ’
Plaintiff’s arguments on these motions are largely a repetition of the arguments advanced in support of its motion for a temporary injunction. While they have been considered de novo, the reasoning of Mr. Justice Crisona is so cogent and compelling that this court is in complete agreement therewith.
Little further need be added. Cases cited by the plaintiff to the effect that the city cannot legally revoke plaintiff’s franchise are beside the point. The city is not revoking plaintiff’s franchise nor has it condemned any of plaintiff’s property. Indeed, the city concedes that it cannot condemn plaintiff’s property without the enactment of express legislation to that effect.
For like reasons, the case of Great Neck Water Auth. v. Citizens Water Supply Co. (12 N Y 2d 167) is inapposite with respect to the necessity for approval of the Water Resources Commission since that case involved the taking by condemnation of an existing water supply. Such is not the case here.
While the action of the defendants may have an unfortunate impact upon plaintiff’s business, it cannot be said to be illegal or unconstitutional.
The court wishes to express its thanks to all counsel herein for their excellent briefs which were of great aid to the court.
Defendants’ motions for summary judgment are granted. Plaintiff’s request for summary judgment in its favor'is denied.