HAMILTON *v.* TAYLOR *et al.*

In an action for money lent and advanced, the plaintiff proved a chattel mortgage executed by the defendant, reciting that he was justly indebted to the plaintiff " for advances made by him under a contract, dated September 11, 1849, which is, by an instrument bearing even date herewith, canceled, waived and abandoned by all the parties thereto." In a subsequent clause of the mortgage it was declared to be made only to secure the application of the proceeds of the sales of certain property to the payment of the plaintiff's claim, and its condition to be broken only by the neglect of the defendant so to apply them: *Held*, that the contract and release mentioned in the mortgage were competent evidence for the defendant to explain the admission of indebtedness and disprove the existence of any personal demand against him.

APPEAL from the Supreme Court. The complaint was for money lent and advanced to the defendants, and laid out and expended for their benefit, and at their request, for the purpose of promoting the use and sale of a machine for carving wood and metal, and of patent rights under a patent for said machine, of which the defendants were proprietors. It alleged an accounting and settlement between the parties in relation to such loans and advances, on the 13th of April 1850; that the transactions and engagements between the parties were then brought to an end, and that thereupon the defendants were found and acknowledged themselves to be indebted in the sum of $1,195.85, which they promised to pay.

The answer set up that the advances were made under a special contract, made September 11, 1849, by which the plaintiff and one Douglass agreed to make them, and were to be repaid out of the net proceeds of the sale of the machines and patent rights, and not otherwise, and were also to receive a share of the profits; that after going on awhile under this contract, dissatisfaction arose b· *l*ween the parties, and they came to a new agreement, *whereby all the

parties to the contract agreed to relieve each other from the performance thereof and the defendants agreed to execute a written contract in the nature of a chattel mortgage, to secure the payment of the amount advanced by the plaintiff, in the manner therein and hereinafter specified; and the defendants further agreed to execute, and did execute, a written contract to pay the plaintiff two and a half per cent on the amount of all sales of the moulding machine or articles manufactured by the defendants by means of it, and of the sales of patent rights therefor; that thereupon the parties mutually released each other from the original contract, and that since that time the defendants have not manufactured or sold any moulding machine nor any patent right, nor received any profits or avails from any such sale.

Upon the trial, at the New York circuit, before Mr. Justice CLERKE — a jury having been waived — the plaintiff proved the amount of his advances as stated in the complaint, and that the defendants agreed to secure the payment by a chattel mortgage, which was then produced, proved and read. It was dated April 13, 1850 — recited that the defendants were justly indebted to the plaintiff in the sum of $1,195.85 and interest, for advances made by him under a certain contract dated September 11, 1849, " which said contract is, by an instrument bearing even date herewith, canceled, waived and abandoned by all the parties thereto." It then, in a separate clause, in consideration of the sum before stated, and to secure the payment thereof, granted, assigned, &c., the letters patent and the net proceeds of all articles to be manufactured by the defendants with the patented machine, subject to the condition that when the latter should pay out of the proceeds of the first sales made by them of the right to use or vend the machine the sum of $1,195.85, then the mortgage to be void. " It being understood and agreed by the parties hereto that this mortgage is made only to secure the application of the proceeds of the first sales to the payment of the above claim of

Hamilton, and that the condition of this mortgage can only be violated by the neglect or refusal of the defendants to pay over to said Hamilton such proceeds of sale to the extent of said claim." It was admitted that the defendants had, subsequent to the execution of the mortgage, manufactured no machines and disposed of no patent rights.

The defendants were permitted, under successive exceptions by the plaintiff, to prove the original agreement under seal of September 11, 1849, and the agreements and release set up in the answer and executed at the time of making the mortgage. Judgment was rendered in favor of the defendants, which having been affirmed at general term in the first district, the plaintiff appealed to this court.

*William R. Stafford*, for the appellant.

*Ambrose L. Jordan*, for the respondents.

SELDEN, J. The claim of the plaintiff, in this case, rests entirely upon the clause in the instrument called a chattel mortgage, executed April 13, 1850, in which it is recited that the defendants " are justly indebted" to the plaintiff in the sum of $1,195.85 ; and if he could be permitted to separate so much as contains this bare acknowledgment from all that precedes and follows it in the same instrument, as well as from the history of the transactions between the parties, his suit might, perhaps, be sustained, since a chattel mortgage, taken as a security for an antecedent indebtedness, might not discharge the debts unless it was so agreed. But the same clause upon which the plaintiff relies, as containing the acknowledgment, shows that the indebtedness admitted was for advances made upon a previously existing written contract, which was canceled simultaneously with the execution of the chattel mortgage.

The defendants' counsel insists that this contract may be referred to in order to explain the words relied upon to

Hamilton *v.* Taylor.

prove the indebtedness; while on the other hand it is contended by the plaintiff's counsel, that the language of the chattel mortgage is so explicit and unequivocal that no extrinsic evidence can be resorted to for the purposes of explanation. Upon this issue between the counsel the whole case depends.

It is a familiar rule, that we are not to select out a part of any written instrument and construe it by itself, but the whole is to be taken into consideration in putting a construction upon each of the parts. So also where two or more documents relating to the same subject are executed at the same time, they are all to be taken and construed together as one instrument. These are but branches of the still more general rule, founded in reason and common sense, which holds that no accurate judgment can be formed by considering only a part, not merely of a written instrument, but of any other subject. The rules that where part of a conversation is given in evidence the whole must be received, and that where part of any transaction is proved, nothing which constituted any portion of the *res gestæ* can be rejected, flow from the same general principle.

The present case may not fall strictly within the terms of any of the separate branches of this rule to which I have referred; but it is clearly within the reason and spirit of the doctrine upon which they are based. The chattel mortgage, in this case, constitutes but a part of an entire transaction. It grew out of and was the legitimate product of the agreement which preceded it. It is obvious that its purpose and object can be better understood after knowing the previous contracts of the parties, and the relations subsisting between them. It refers in terms to the previous contract, and is thereby on its face connected with it. It would seem clear, therefore, that the original agreement could not fail to throw light upon the object and meaning of the subsequent mortgage.

The rule referred to by the plaintiff's counsel, that to war-rant the introduction of parol evidence to explain a written instrument there must be something equivocal or uncertain in the language to be explained, does not apply to this case. The evidence given for the purpose of explanation was of as high an order as that which it was admitted to explain. It was not received upon the ground of any apparent ambiguity in the mortgage, but as a part of the documentary history of the transaction between the parties, and as insep-arably connected with the mortgage itself. The other instruments executed at the same time with the mortgage were, of course, admissible. Looking, then, at the whole case, it is apparent that no actual indebtedness existed prior to the execution of the mortgage. The advances made upon the contract of September 11, 1849, were to be repaid out of the proceeds of the sales, and created no personal demand against the defendants.

The arrangement entered into on the 13th of April, 1850, did not have the effect of converting these advances into such a demand. It was not a mere settlement of accounts between partners, and a statement of a balance due from one to the other, as claimed by the plaintiff's counsel; but was the substitution of an entirely new agreement in place of that previously existing. The interest of the plaintiff in the business did not cease with the cancellation of the original contract, but was to be continued under the new arrangement; a per centage upon the amount of sales was substituted for a share in the profits. This provision is hardly consistent with the idea that the defendants intended to assume the payment of the advances as a personal obli-gation. That supposition is, I think, also repelled by the declaration contained in the mortgage, that it was made solely to secure the application of the proceeds of the first sales to the payment of the plaintiff's claim, and that its condition could only be violated by a refusal to pay over such proceeds.

This clause seems to have been inserted for the express purpose of avoiding any responsibility on the part of the defendants, except that of a faithful application of the proceeds of sales, pursuant to the conditions of the mortgage. The plaintiff, therefore, must seek his relief under the provisions of the agreement of the 13th of April, 1850. If there has been a violation of the express conditions of that agreement, or of any implied obligation on the part of the defendants to proceed with the manufacture and sale of machines, the plaintiff may have a remedy in some appropriate form.

But in the present case neither the allegations nor the proofs are such as entitle them to judgment. The defendants have not been called upon, by anything in the pleadings or in the course of the trial, to contest their liability for a failure to perform their implied obligations to go on with the business, and of course cannot be held responsible for such failure, in this suit.

The judgment of the Supreme Court should be affirmed.

COMSTOCK, J., did not sit in the case; all the other judges concurring,

Judgment affirmed.