## TRACY v. FIRST NAT. BANK OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department. February 16, 1900.)

PLEDGE—SALE OF COLLATERAL—APPLICATION OF SURPLUS.

A corporation was largely indebted to defendant, and, to secure an additional loan, executed to defendant its notes secured by accounts in excess of the amount of the loan. The assignment of the accounts provided that, in case of public sale, the holder might purchase without being liable to account for more than the net proceeds of such sale, and any surplus arising from such sale might be applied to any other debt; and a further memorandum assigned the accounts to defendant, with full authority to collect in any manner it might choose. Neither of the notes was paid, and defendant collected from the accounts an amount more than sufficient to satisfy them. *Held*, that defendant was entitled to apply the surplus to other debts, though such surplus was realized from collections instead of from a public sale.

Appeal from judgment on report of referee.

Action by William G. Tracy, as temporary receiver of Sweet's Manufacturing Company, against the First National Bank of Syracuse. Facts found by referee. From a judgment for defendant, plaintiff appeals. Affirmed.

On the 4th day of March, 1897, the corporation of which the plaintiff is the receiver obtained from the defendant a loan of $11,000, for which it gave its certain promissory note in the words and figures following, viz.:

"110.                                  8,250.                          May 4.

$11,000.                                        Syracuse, N. Y., Mch. 4th, 1897.

"11,110. Two months after date we promise to pay to the First National Bank of Syracuse, N. Y., or order, eleven thousand dollars, for value received, payable at their office, with interest at six per cent. per annum, having deposited or pledged as collateral security for the payment of this note $11,877.86 accounts, as per list attached. * * * And we hereby give to the holder hereof full power and authority to sell or collect, at our expense, all or any portion thereof, at any place, either in Syracuse, New York, or elsewhere, at public or private sale, at holder's option, on the nonperformance of the above promise, and at any time thereafter, and without advertising the same or otherwise giving to us any notice. In case of public sale, the holder may purchase without being liable to account for more than the net proceeds of such sale, and any surplus arising from a sale of this collateral may be applied on any other indebtedness owing by us to said bank.

"Sweet's Manfg. Co.,
"By F. H. Nye, Jr., Treas."

Accompanying this note, and bearing even date therewith, there was also executed and delivered to the defendant a written memorandum of assignment, of which the following is a copy, viz.:

"Miscellaneous Accounts.

"To Sweet's Manfg. Co., Dr., per list attached, amounting to $11,877.86.

"The above-mentioned goods have been delivered, and the account rendered above is correct, and no part of the same has been paid, and there are no offsets to it, and for value received it is hereby assigned to the First National Bank, Syracuse, N. Y., with full authority to collect in any manner they may choose, and any checks given or drafts accepted in payment of the same shall belong to the bank, with full authority to indorse our name on the same.

"Syracuse, N. Y., March 4th, 1897.                    Sweet's Manfg. Co.,
"By F. H. Nye, Jr., Secy. and Treas."

Attached to this latter instrument was a list of the bills and accounts assigned, which amounted in the aggregate to the sum of $11,877.86. On the 13th day of April, 1897, the plaintiff's corporation obtained from the defendant an

additional loan of $4,000, for which it gave a like note, and by a similar instrument assigned to it bills and accounts of the value of $6,966.31. Neither of the notes was paid by the company, but the defendant collected from the assigned securities moneys which were more than sufficient to pay the same; the excess thus obtained from the accounts first assigned, over and above the amount due upon the note, being the sum of $539.45, and from the accounts last assigned $2,389.61. At the time these notes matured the plaintiff's corporation was indebted to the defendant for the extent of at least $30,000, over and above the amount of the two notes, and the surplus obtained from the assigned securities was applied by the defendant upon such indebtedness. Upon the 6th day of May, 1897, the plaintiff was duly appointed temporary receiver of Sweet's Manufacturing Company, and as such receiver he brings this action to recover the surplus moneys so applied.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

George D. Chapman, for appellant.
Hiscock, Doheny, Williams & Cowie, for respondent.

ADAMS, P. J. The learned referee has found, and the evidence contained in the record fully justifies the finding, that the bills and accounts which were assigned to secure the two notes in question were for goods sold and delivered by the manufacturing company to various customers, and that the same were in fact paid to the bank from time to time, the greater portion of those embraced in each list being paid before the respective notes matured; that the bank received the amounts thus paid both before and after the maturity of the notes, applying so much thereof as was necessary to extinguish the notes, and crediting the surplus upon the general indebtedness of its assignor. It is now contended that, inasmuch as such surplus was realized from collections instead of from a public sale of the assigned accounts, the defendant has no right, within the express terms of the contract, to retain the same for any purpose; and it necessarily follows that, in order to determine what force, if any, there is to this contention, construction must be given to the language of the assignment, and the real intention of the contracting parties in that manner ascertained.

The rules which govern in cases of this character have become familiar by reason of their repeated enunciation by the courts, but, for the purpose of this review, we shall reiterate and adopt those formulated by the court of last resort in the latest decision of that tribunal which has been brought to our notice. It is there declared that:

"In the construction of written contracts, it is the duty of the court, as near as may be, to place itself in the situation of the parties, and, from a consideration of the surrounding circumstances, the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed. Contracts are not to be interpreted by giving a strict and rigid meaning to general words and expressions, without regard to surrounding circumstances, or the apparent purpose which the parties sought to accomplish. * * * If the language of a promise may be understood in more senses than one, it is to be interpreted in the sense in which the promisor had reason to believe it was understood." Gillet v. Bank, 160 N. Y. 549–555, 55 N. E. 292–294.

With these rules, therefore, for our guide, let us place ourselves "in the situation of the parties, and from a consideration of the

surrounding circumstances, the occasion and apparent object of the parties," endeavor to determine the meaning and intent of the language employed in the particular instruments now under consideration.

At the time of their execution, the company which this plaintiff represents was heavily indebted to the defendant. It was obviously embarrassed by reason of lack of necessary funds with which to conduct its business and meet its financial engagements. In these circumstances, it applied to the defendant for additional loans, which apparently the bank was unwilling to advance unless ample security was furnished, and, to meet this requirement, assignments of a large number of bills and accounts were executed, the aggregate amount of which was considerably in excess of the desired loans. This being the case, it requires no stretch of the imagination to reach the conclusion that the bank availed itself of the opportunity which the situation afforded to insist that such excess should be applied to a reduction of the company's general indebtedness, and this phase of the transaction was covered by the last paragraph of the contract of assignment annexed to the notes.

It is not to be denied that a literal construction of the language of this paragraph would limit the appropriation of any surplus to the reduction of the assignor's general indebtedness to such only as might arise from a "sale" of the collateral assigned; but would such a construction represent the obvious intent of the parties, in view of the existing situation? In our attempt to answer this inquiry, we at once encounter another and an equally pertinent one, viz.: Why should the application of any funds to the payment of a debt not represented by either of the notes in question be dependent upon the contingency of a surplus arising after a sale of such accounts, either public or private, instead of upon their regular collection by the assignee? If any answer to this inquiry can be furnished which will accord with the manifest intention of the parties, as expressed in their written contract, it has yet to be suggested. On the contrary, it is apparent that the construction contended for might, and probably would, operate to defeat one of the main objects the parties had in view when entering into this agreement, by permitting the debtor to procure the payment of the outstanding accounts a day or two before the notes matured.

Had the collateral assigned consisted of marketable securities, such as stocks, bonds, etc., their collection by "sale" upon "nonperformance" of the obligation assumed by the plaintiff's company would have been the proper and usual method of procedure; but, as the bills and accounts assigned were maturing at different periods of time, it can hardly be said that the assignee thereof was bound to retain them until the maturity of the obligation to secure which they had been assigned, and then go through the form of a sale thereof, in order to secure to itself whatever surplus might arise therefrom for application to the company's general indebtedness, which, as we have already indicated, was the obvious design of the parties. No rule of construction is more definitely settled

than the one which declares that a particular portion of a written instrument, instead of being separated from its context and construed by itself, shall be considered in connection with, and in the light of, all which precedes and follows it, and that, where two or more instruments relating to the same subject are executed at the same time, they shall be taken and construed in connection with each other. Hamilton v. Taylor, 18 N. Y. 358; Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275; Fox v. Hotel Co., 41 App. Div. 140, 58 N. Y. Supp. 441. When the present case is subjected to the test of this rule, and recourse is had to the memorandum which accompanied and was annexed to a statement of the accounts assigned, it will be seen that such accounts were assigned to the defendant with full authority to collect the same in any manner it saw fit. This language is obviously inconsistent with the restrictive clause in the assignment proper, and tends, we think, to essentially modify the literal interpretation of that instrument. In short, the different instruments, when taken together and in connection with all the circumstances under which they were executed, express to our mind an unmistakable intention upon the part of the defendant to exact, and upon the part of the plaintiff's company to concede, as a condition of its obtaining the additional loans represented by the notes, that any surplus obtained from the sale or collection of the securities collateral thereto should be applied in the manner the defendant has applied it. It is asserted, however, that, if this construction is placed upon the instruments in question, it must be held that the officer of the corporation who executed them exceeded his authority; but this contention is hardly tenable, in view of the fact that his action was subsequently ratified by a formal resolution of the board of directors, called together for that express purpose. We think the case was properly decided by the learned referee, and that the judgment appealed from should therefore be affirmed.

Judgment affirmed, with costs. All concur.