227, 234, 235; Whitney v. Whitney, 43 N. Y. St. Rep. 841–843, 853–857, 18 N. Y. Supp. 3; Olmstead v. Olmstead, 4 N. Y. 56.

My conclusion is, therefore, that the trust is terminated, and that the fee is now vested absolutely in Ralph, in whose favor judgment should be awarded accordingly.

(71 App. Div. 544.)

In re BOARD OF WATER COM'RS OF VILLAGE OF WHITE PLAINS et al.

(Supreme Court, Appellate Division, Second Department. April 25, 1902.)

1. WATER COMPANY—CONDEMNATION BY VILLAGE—FRANCHISE.

The Statutes of 1873 and amendments require persons proposing to form a corporation for supplying a village with water to apply to certain officers, provided that if the application is granted the corporation may be formed, and declare that the contract with the village cannot be made for a longer term than five years. A village granted permission to a water company on condition that at the end of every five years thereafter the village might purchase the waterworks, and the contract between the village and the company contained a similar provision. *Held*, that the condition in the grant of permission and in the contract defined the powers of the company, and therefore in proceedings to condemn the works the company could not claim damages for a franchise unlimited as to time.

2. SAME—CONTRACT TO SELL—POWER OF CORPORATION.

A corporation created to establish and operate a waterworks system for a village may contract with the village to sell its property at the expiration of the time limited by the statute and the contract for the exercise of its privileges.

3. SAME—CONTRACT TO PURCHASE—AUTHORITY OF VILLAGE.

Under Laws 1875, c. 181, as amended by Laws 1881, c. 175, Laws 1883, c. 255, and Laws 1885, c. 211, authorizing the villages of the state to furnish their inhabitants with water, a village may contract with a water company for the purchase of the latter's waterworks system, the village not being obliged to proceed by condemnation proceedings only.

4. SAME—CONTRACT—CONSTRUCTION.

A contract between a water company and a village provided that the village reserves the right at the expiration of every five-year period, dating from the completion of the waterworks, to purchase the works by giving to the company one year's notice of such intention, and provided for the appointment of appraisers by the company and the village. *Held*, that the provision, when construed with the entire contract, containing various reciprocal obligations, constituted a valid mutual agreement, and not a mere reservation.

5. WATERWORKS—FRANCHISE—CONDEMNATION—VALUE—TERMINATION.

In proceedings by a village for the condemnation of waterworks, the fact that the contract with the water company stipulated for its termination at a fixed period, and conferred upon the village the power to purchase the works at the expiration of the period, and so end the company's franchise, must be considered in determining the value of the franchise.

6. SAME—POWER OF VILLAGE.

Under Laws 1896, c. 760, creating a village board of water commissioners, and authorizing the board to acquire, by proceedings for the condemnation of real property, "lands, easements, water rights, water plant, mains and connections owned by individuals or water companies," the commissioners may maintain proceedings to condemn a company's waterworks system.

7. SAME—FRANCHISE—COMPENSATION.

In proceedings by a village to condemn a company's waterworks, which have been maintained under a nonexclusive franchise and a contract determinable at the election of the village at the expiration of any five-year period, begun shortly before the expiration of a five-year period, the commissioners appointed to award the damages determined' that the company did not possess a franchise requiring compensation, but awarded the company $3,000 in part payment for its "nominal and useless rights," possessed at the commencement of the proceedings. *Held*, that the company could not complain of the award, for the commissioners would not have erred if they had totally disregarded the profits to be realized after the commencement of the condemnation proceedings.

8. SAME—RIGHT TO PURCHASE—FAILURE TO GIVE REQUIRED NOTICE—EFFECT.

In proceedings by a village to condemn a company's waterworks, constructed and maintained under a nonexclusive franchise, and a contract authorizing the village to purchase the property at the expiration of any five-year period upon giving one year's previous notice of its intention to purchase, commenced a few months before the expiration of a five-year period, the failure of the village to give the notice as required is immaterial, for the village was not bound to renew the contract.

9. SAME—RIGHT TO EXIST—COMPENSATION.

In proceedings by a village to condemn a company's waterworks, constructed and maintained under a nonexclusive franchise, and a contract authorizing the village to purchase the property at the expiration of any five-year period, commenced a few months before the expiration of a five-year period, the company could not claim compensation for destroying its right to exist, such right being inseparably connected with the waterworks system.

10. SAME—RIGHT OF COMMISSIONERS.

In proceedings to condemn a company's waterworks system, the commissioners, in determining the amount to be awarded, are not, like a jury, restricted to any particular kind of evidence, but they may procure facts in any way, as prudent men ordinarily do, to satisfy themselves in similar matters.

11. SAME—REVIEW OF AWARD.

The award of commissioners in condemnation proceedings will not be disturbed unless palpably inadequate or excessive.

12. SAME—MEASURE OF COMPENSATION.

In proceedings by a village to condemn a company's waterworks system, constructed under a nonexclusive franchise, and a contract authorizing the village to purchase the property at the expiration of any five-year period, the compensation to be awarded is the market value of the property, including its franchise and the value of any business under existing contracts which might accrue to a purchaser, but not the value to the petitioners or owners.

Appeal from special term, Westchester county.

Proceedings by the board of water commissioners of the village of White Plains to condemn the property of the Westchester County Waterworks Company and others. From the judgment entered on the report of the commissioners, defendants appeal. Affirmed. See 66 N. Y. Supp. 1005.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

David McClure, for appellant Farmers' Loan & Trust Co.

Louis Marshall, for appellants Westchester County Waterworks Co. and New York & White Plains Suburban Waterworks Co.

H. T. Dykman, for respondent.

JENKS, J. The supplementary report of the commissioners, Messrs. Joseph F. Daly, William Temple Emmet, and William H. Wright, clearly and cogently states the basis of their award. They report that they intended to cover, and did cover, whatever rights to transact future business in White Plains the Westchester Waterworks Company possessed at the beginning of the proceedings, and that they were unanimously of the opinion that the company did not possess such a franchise as would entitle it to an award therefor, based upon its annual earnings or its future business prospects, for the reason that the restrictive conditions which incumbered the franchise made its value necessarily insignificant compared with the value of an unrestricted franchise. They concluded that the water company did not possess a valuable franchise, which could be taken as the basis for the transaction of an unlimited, or even of a limited but prolonged, amount of future business. They determined that approximately $100,000 would cover the value of the plant and the realty, and the balance of the award was made in part as a slight overpayment for the material properties taken, and in part as a payment "for the nominal and practically valueless remaining 'rights' which the company possessed at the time of the commencement of these proceedings." Thus, it appears that some compensation was made for the franchise.

The acute and learned counsel for the respective corporations appellant first contend that the water company acquired a valid franchise, unlimited as to time, to supply water to the village of White Plains and to its inhabitants. On May 14, 1886, under the act of 1873 and the amendments thereto, certain persons requested the board of trustees of White Plains to consider their application to supply water, and to grant permission to form a waterworks company. On May 28, 1886, permission was granted under certain conditions. One of them read: "The village shall have at the end of five years, and at the end of every five years thereafter, the right to purchase said waterworks in the manner as now provided by law." On June 7, 1886, the certificate of intention of incorporation was executed, and on July 1, 1886, a contract was entered into between the company and the village of White Plains, reciting the permission of May 28, 1886, and that the party of the first part was a corporation formed pursuant thereto. The contract contained the following clause:

"Purchase: The party of the second part reserves the right at the expiration of five years from the date of the completion of the works, and at the expiration of every five years thereafter, to purchase said works as they may then exist by giving to said company one year's notice of such intention, and paying to said company the appraised valuation; the amount so to be paid to be determined by three persons not in the interest or employ of said village or company, the board of trustees of said village choosing one, and the company choosing one, and these two persons choosing a third. Such valuation by said appraisers in no case to exceed the cost of the said works more than 10 per cent.; and the decision and appraisal of these persons to be final and conclusive on the parties to this contract."

The assent of the village authorities was a preliminary and a necessary step in the formation of the corporation. In re City of Brooklyn, 143 N. Y. 596, 607, 38 N. E. 983. After the corporation was formed

it became its duty and it was authorized and empowered in the premises to contract with the authorities or with the inhabitants to supply water. In Re City of Brooklyn, at page 613, 143 N. Y., and page 987, 38 N. E., Gray, J., says:

"The dealings with the town authorities amounted to a proposition to form a company for the purpose of supplying water to the inhabitants from certain sources, upon which the authorities acted by voting in acceptance thereof. Under the statute that warranted the formation of a company, and authorized it to proceed with its works and the laying of pipes in the streets. The subsequent formal contract regulated the relations of the contracting parties, fixed the number of miles which the company should pipe, limited the prices to be charged, and in other ways arranged for the working of the contract."

The assent gave the corporation life, and the contract ruled and defined its doings. The law provided that the contract with the village could not be made for a longer period than five years. 3 Banks & Bros. Rev. St. (8th Ed.) § 5. The condition of the grant was plain notice that the village had in view the ultimate acquisition of the waterworks, and the formal contract thereafter made embodied a provision for the purchase thereof. The only practical difference is that under the grant the purchase was to be made in any manner which the law permitted, and in the contract there was an agreement for purchase and sale as if between an ordinary vendor and vendee. I shall consider presently the powers of purchase permitted by the law.

The next question presented by the appellant is whether the purchase clause in the contract was valid. The general rule is that the corporeal property of a corporation may be sold and transferred. Railroad Co. v. Miller, 114 U. S. 176, 5 Sup. Ct. 813, 29 L. Ed. 121. I find no express or implied statutory prohibition against such a sale as is provided for in the agreement, and I think that it was fairly within the powers of the company. In order to perform its contract with the village, the company must make an outlay commensurate with its obligation. The statute provided that the term of such contract should not exceed five years. There was a possibility of a renewal, but no assurance of it. At the termination of the contract, the company might have no further, at least no immediate, use for so extensive a plant, or, indeed, for any plant, and common business prudence would suggest its sale to the one who naturally would desire to buy it for use. In view of this, I think that an agreement to sell the waterworks at such time was fairly within the powers of the corporation. Le Grand v. Association, 80 N. Y. 638; Railway Co. v. Redmond, 10 C. B. (N. S.) 675, citing Shrewsbury & B. Ry. Co. v. Northwestern Ry. Co., 6 H. L. Cas. 113; Mor. Priv. Corp. §§ 335, 336, 419; Brady v. Mayor, etc., 1 Barb. 584; Barry v. Exchange Co., 1 Sandf. Ch. 280; Green's Brice, Ultra Vires, 68, and authorities; Dupee v. Water Power Co., 114 Mass. 37; Yates v. Van De Bogert, 56 N. Y. 526. On the other hand, I think that the proposed purchase could not be said to be ultra vires the village (Mor. Priv. Corp. § 420); for there was a statute available under which it could purchase the property (chapter 181, Laws 1875, especially section 4, as amended chapter 175, Laws 1881, chapter 255, Laws 1883, and chapter 211, Laws 1885). The village was not, under these statutes, bound to pro-

ceed by condemnation. Skaneateles Waterworks Co. v. Village of Skaneateles, 161 N. Y. 154, 160, 162, 55 N. E. 562, 46 L. R. A. 687; Warsaw Waterworks Co. v. Village of Warsaw, 16 App. Div. 502, 44 N. Y. Supp. 876, modified, but not on this point, and affirmed 161 N. Y. 176, 55 N. E. 486.

It is also contended that the purchase clause in the contract is a mere reservation, and that it lacks the element of mutuality. The agreement contained many provisions which were in form akin to specifications; e. g., "Supply Reservoir," "Pump System," "Indemnity Rental," "Purchase." The learned counsel excises this clause from the agreement, and then points out that the clause thus isolated does not embody any agreement upon the part of the water company. I know of no authority which requires that there must be restoration of the formal words of contract in every clause thereof. In order to determine the true construction of a clause, we should resort to the agreement in its entirety. Hamilton v. Taylor, 18 N. Y. 358, 361; Sattler v. Hallock, 160 N. Y. 291, 297, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686. The instrument was under seal, executed by both parties, whereby they did covenant and agree, and at the close thereof it is termed "this contract." The very idea of purchase imports a sale. If both of the parties did covenant and did agree that one of the parties should reserve the right to purchase the property of the other at a certain period, it is a fair implication that the other party would sell at that time. I think that there is no force in the objection. Bish. Cont. 315; Nounenbocker v. Hooper, 4 E. D. Smith, 401; Richards v. Edick, 17 Barb. 260; Barton v. McLean, 5 Hill, 256; Baldwin v. Humphrey, 44 N. Y. 609, 615; Booth v. Mill Co., 74 N. Y. 15; Butler v. Thomson, 92 U. S. 412, 416, 23 L. Ed. 684; Baker Transfer Co. v. Merchants' Refrigerating & Ice Mfg. Co., 1 App. Div. 507, 37 N. Y. Supp. 276. Moreover, I find in the clause itself a provision that upon the proposed purchase the company shall select an arbitrator as to the value, which implies not only consent, but concert, upon the part of the company, and the further provision that such appraisal shall be conclusive on the parties. The cases cited contra may be discriminated. In Railroad Co. v. Dane, 43 N. Y. 240, the court construed the word "agree" in the defendant's letter as synonymous with "offer," the answering letter as the acceptance of the offer that the defendant would receive not exceeding 6,000 tons gross, and held that the letter of the defendant was a mere proposition. In Stern v. Ladew, 47 App. Div. 331, 62 N. Y. Supp. 267, there was no written contract, and the alleged contract was stated in these words: "Mr. Fayerweather said to me: 'If you shingle the hides for me—all your hides which you kill and buy—I will give you the highest market price, and one cent a pound above the market price for your hides,'"—and the agreement as thus expressed was held a mere option. In Moffett v. City of Goldsborough, 3 C. C. A. 202, 52 Fed. 560, the court below held that the mere ordinance authorizing certain individuals to construct, maintain, and operate waterworks was a contract to build and complete the waterworks, and that a bond required of the grantees (though nothing in the ordinance itself warranted the requirement thereof) was security for the execu-

tion thereof; and the circuit court of appeals held this to be error, inasmuch as the ordinance did not constitute a contract, and the failure of the grantees to proceed thereunder did not make them liable on the bond. But in the case at bar it must be considered that in the assent itself there is a reservation of this right of purchase which cannot be disregarded.

In People v. O'Brien, 111 N. Y. 1, 46, 18 N. E. 692, 701, 2 L. R. A. 255, 7 Am. St. Rep. 684, the court say:

"It may be assumed in this discussion that the authority of the legislature to repeal a charter, if it has expressed its intention to reserve such power in its grant, constitutes a valid reservation. Parties to a contract may lawfully provide for its termination at the election of either party, and it may, therefore, be conceded that the state had authority to repeal this charter, provided no rights of property were thereby invaded or destroyed."

We are not then considering a mere assent, but an assent with reservation; and not only an assent with a reservation, but a formal contract. I am clear that the contract of July, 1892, was a renewal of the original contract, inasmuch as it not only recites that contract of 1886, but also that it has been mutually agreed to renew the said agreement dated July 1, 1886, subject to the changes and modifications hereinafter specifically set forth. The criticism that the purchase clause must be deemed to have been eliminated, because specifically reiterated, may be answered by the statement that the plain and express purpose of restating any of the provisions is to mark the changes and the modifications thereof.

It is true, as contended by the learned counsel, that the purchase clause has no application to the present proceeding in eminent domain; that is, no direct application. But inasmuch as the contract with the village terminated at a definite period, whereupon the right of purchase might be exercised, and the right of purchase involved the power to put an end to that franchise which was essential to the operations of the company and was inseparable from its waterworks and its system, it might be taken into consideration upon the question of value of the franchise. West Chester & W. Plank Road Co. v. West Chester Co., 182 Pa. 40, 50, 51, 37 Atl. 905. I think that chapter 769 of the Laws of 1896 authorized the condemnation of the franchise. Section 3 of that act provided for the acquisition of "any lands, easements, water rights, dam, water plant, water mains and connections, laterals and appurtenances, whether owned or possessed by individuals or water companies. * * * Nothing herein contained shall be deemed to enhance the value of or add to the franchise or property of said individuals or water companies," etc.

I now consider the disposition made of the franchise by the commissioners. Generally speaking, a franchise is a right or privilege conferred by law. Mor. Priv. Corp. § 922, and authorities cited. We find that the term when applied to a corporation is often used indifferently to describe the right to be or the right to act, or, again, mere personal immunities.

In Morgan v. Louisiana, 93 U. S. 217, 223, 23 L. Ed. 860, the court, per Field, J., say:

"Much confusion of thought has arisen in this case and in similar cases from attaching a vague and undefined meaning to the term 'franchises.' It

is often used as synonymous with rights, privileges, and immunities, though of a personal and temporary character; so that, if any one of these exists, it is loosely termed a 'franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain."

When this corporation was formed it became possessed of certain rights and privileges which were essential to its operations, without which its corporeal property, its reservoir, storage system, pipes, and the like would be of little value. Those rights and privileges, generally speaking, were the rights to collect and to store water to convey it to consumers, and to charge water rates therefor. I have followed the language mutatis mutandis of Field, J., in Morgan v. Louisiana, supra, who concludes that such rights and privileges may be conveyed to a purchaser as part of the property of the corporation. See, too, Railroad Co. v. Miller, supra.

In People v. O'Brien, supra, the court, per Ruger, C. J., referred to such "franchises" as are usually authorized to be transferred by statute, viz., those requiring for their enjoyment the use of corporeal property, such as railroad, canal, telegraph, gas, water, bridge, and similar companies, and not to those which are in their nature purely incorporeal and inalienable, such as the right of corporate life, the exercise of banking, trading, and insurance powers, and similar privileges, saying that the franchises last referred to, being personal in character and depending upon the continued existence of the donee for their lawful exercise, necessarily expire with the extinction of corporate life unless special provision is otherwise made, citing People v. Brooklyn, F. & C. I. Ry. Co., 89 N. Y. 75; but, further, speaking of the former class, the learned judge also said:

"In the former class it has been held that at common law real estate acquired for the use of a canal company could not be sold on execution against the corporation separate from its franchise, so as to destroy or impair the value of such franchise (Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635); and by parity of reasoning it must follow that the tracks of a railroad company and the franchise of maintaining and operating its road in a public street are equally inseparable, in the absence of express legislative authority providing for their severance."

See, too, Parker v. Railroad Co., 165 N. Y. 274, 280, 59 N. E. 81; People v. Trustees of Geneva College, 5 Wend. 211, 217.

When the proceedings were begun the commission had before it a corporation which had the right or privilege to furnish water to the village of White Plains and the inhabitants thereof. The right did not afford a monopoly, because the company was open to competition from other corporations which might legally be formed or from the village itself. The company had a contract with the village, which expired by legal limitation in a few months. It is to be inferred that it had contracts with individuals, but the legal duration thereof does not appear. There was a possibility of an extension of the contract with the village, but every probability against it, for the reason that the village had exercised the right of notice under the purchase clause, which provided for a purchase at the close of the contract. There was not the slightest legal obligation upon

the village or upon individuals to take a drop of water from the corporation beyond their respective contracts. Skaneateles Waterworks Co. v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687. Aside from the right of acquiring the franchise and the plant of the water company, the village had the right to go into the business of supplying water to itself and to its inhabitants. I conclude that there were no data whatever for any forecast that the corporation would have the assurance of any future business dealings even with the individual inhabitants, and that any award of substantial damages, based upon the deprivation of such business, would have no foundation on either facts or on probabilities. I think that the basis of the award was correct, and is sustained by the decisions in Re City of Brooklyn, supra; Long Island Water Supply Co. v. City of Brooklyn, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165.

In Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 187, 22 N. E. 381, 387, 5 L. R. A. 546, the court say:

"But the franchise granted to the plaintiff and the property united with it constitute its estate, and which it holds subject to the reserved right of the city to acquire it in the manner so provided by the charter."

The contract with the village would have expired in 1897. These proceedings were begun in September, 1896. The water company was entitled to retain its property until the compensation determined on was paid, inasmuch as the court had not awarded prior possession thereof. The report was not confirmed until 1898. While the company retained its property it was enabled to fulfill its contracts and to collect its water rentals. I think that the compensation to be made was to be determined in view of the time of the award, and that, therefore, the commissioners would not have erred if they had entirely disregarded the possible profits to be realized under the contract, which expired within a few months after the condemnation proceedings were begun. But, as I have said, they report that they did allow $3,000 in part payment "for the nominal and practically valueless rights which the company possessed at the time of the commencement of the proceedings." It is said that the notice of purchase under the contract was served too late. I take it that the learned counsel means that less than a year intervened the date of the service of the notice and the expiration of the contract. But, even so, there was no consequent obligation upon the village to renew the contract, and, as the franchise was not exclusive, there is no presumption that the village would have been compelled to do so. But let us assume that though the commission intended to make an award for the waterworks and its system, and for the "inseparable franchise" to operate them, which, being inseparable, necessarily followed the waterworks and the system (People v. O'Brien, 111 N. Y. 47, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684, and other authorities, supra), there still remained that other right or privilege, also within the term "franchise," which may be described as the right of this corporation to be. And assume, still more, that such franchise, emanating from the state (Skaneateles Waterworks Co. v. Village of Skaneateles, supra), was still potential, and must also be con-

sidered under the term "franchise" when the commissioners came to the question of compensation for the franchise, how could the commission determine upon any substantial sum that must be paid for wiping the mere right of corporate existence? What was its value? It was not an exclusive right, but it was similar to rights which might be vested in other proposed incorporators and in the village itself. It had no assured field for any business enterprise, for there was no obligation upon any one to deal with it. The value of corporate being is the profits anticipated from the exercise of corporate powers. The exercise in this case would require a new construction of an entire system. There is not the slightest proof that such a venture would result in any return whatever.

Inasmuch, then, as the commissioners state that they did consider the franchise and did make an award therefor, it cannot be said that they failed to consider this mere right of corporate existence. I think that their view was correct, and that their determination should not be disturbed. I am of opinion that the petition was properly filed by the board of water commissioners of the village of White Plains. In re Rochester Water Com'rs, 66 N. Y. 413.

The commissioners, while not a law unto themselves, are nevertheless clothed with not merely the functions of a jury. In Re Furman St., 17 Wend. 649, Bronson, J., says:

"Unlike a jury, they are restricted to no peculiar species of evidence or to any peculiar sources of information. They may collect information in all the ways which a prudent person usually takes to satisfy his own mind concerning matters of the like kind, where his own interests are involved in the inquiry. They may seek light from other minds that they may be better able to arrive at just conclusions, but at the last they must be governed by their own judgment."

See, too, In re Staten Island Rapid Transit Co., 47 Hun, 396, and In re Grade Crossing Com'rs, 52 App. Div. 122, 64 N. Y. Supp. 1074, affirmed 165 N. Y. 605, 58 N. E. 1088. The award in this case was evidently made after much diligent inquiry and patient hearing. It is less than that which they might have awarded if they had accepted the evidence offered by the water company and its allied corporation, and it is more than they might have determined if they had based it on the evidence offered by the petitioner. As was said by Woodward, J., in Railroad Co. v. Reynolds, 50 App. Div. 575, 64 N. Y. Supp. 199: "An award by commissioners will not be set aside for inadequacy or because excessive unless the award is palpably wrong in either respect." See, too, In re Grade Crossing Com'rs, supra. The question to be answered was, what was the market value of the property, including its franchises,—not its value to the petitioners nor to the respondent, but its value in view of all the purposes to which it was naturally adapted. Moulton v. Water Co., 137 Mass. 163. This would include the value of any business under existing contracts which might accrue to a purchaser at the time the compensation was paid and the property taken over. As I have said before, the purchaser would take the plant, the inseparable franchise, the existing contract rights, and the benefits of the going concern, but at the same time there was no exclusive franchise and no

assurance of the continuance of a profit-returning business. In Newburyport Water Co. v. City of Newburyport, 168 Mass. 541, 555, 47 N. E. 533, 534, the court, per Holmes, J., say:

"If capitalizing profits would give a much greater excess over the value of the land, water easements, and plant of the company than the commissioners allowed, the reasons are to be found in the franchise and monopoly of the company, in its right to lay pipes in the streets, and partly, perhaps, in the personal skill of the management, none of which are things for which the city is to pay."

It is true that in the case at bar the corporation is to pay for the franchise; but it is not to pay, nor would any purchaser be compelled to pay, for any right to lay pipes, for the reason, also given by Holmes, J., in the case last cited (page 553, 163 Mass., and page 534, 47 N. E.), that water pipes are not an additional burden to the street, and as soon as any one was authorized to furnish water that right would imply the further right to lay pipes for that purpose. I see no reason why the award should be disturbed either on account of the amount thereof or for any erroneous basis of compensation adopted by the commissioners.

The judgment and order should be affirmed, with costs. All concur.