### GOULD et al. v. VILLAGE OF SENECA FALLS et al.

(Supreme Court, Special Term, Seneca County. September 8, 1909.)

ELECTIONS (§ 65*)—VILLAGE BOND ISSUE—"FUNDED DEBT"—QUALIFICATION OF VOTERS—"RAISING MONEY BY TAXES OR ASSESSMENT."

Village Law (Laws 1897, p. 377, c. 414, as amended by Laws 1906, p. 984, c. 404, § 1) § 41, subd. 2, permits women possessing the qualifications to vote for village officers, except that of sex, who own property assessed at the preceding assessment, to vote upon a proposition to "raise money by taxes or assessment." General Municipal Law (Consol. Laws, c. 24) § 6, provides that a "funded debt" shall not be created by a municipal corporation, unless by a resolution passed by a two-thirds vote of the council adopting it, or on submission to the taxpayers of the village when required by law. A proposition was submitted to the voters of defendant village to issue village bonds to establish a waterworks system, to be paid by the annual levy and collection of taxes. *Held* that the bonds would be a "funded debt," within section 6, which included all municipal indebtedness evidenced by a bond, the principal of which was payable after the current fiscal year, with periodical payments of interest, when provision for payment was made by future taxation, and the proposition to issue them was one to "raise money by taxes or assessment," within the village law, so that women were entitled to vote thereon, and the election was void.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 62; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 4, pp. 3006, 3007.]

Motion for injunction by Norman J. Gould and others against the Village of Seneca Falls and others. Motion granted.

Hammond & Hammond, for the motion.
MacDonald Bros. and Wm. H. Hurley, opposed.

BENTON, J. Motion by plaintiff for an injunction. On June 22, 1909, there was at a special election submitted to a part of the voters of the village of Seneca Falls a proposition to establish a system of waterworks at an estimated cost of from $200,000 to $240,000, and to raise the same by issuing bonds of the village in an amount not to exceed $240,000 at 5 per cent. interest, and to be paid by the annual levy and collection of taxes upon the taxable property of the village to an amount which, with the net revenue derived from the waterworks system, would be sufficient to pay the principal and interest of the bonds.

The resolution is very clearly and carefully drawn, specifying details as to the bonds, their denominations, maturity, and otherwise, so that any intelligent voter, reading the resolution, would be apprised of the full scope and bearing of it. The voters were required to vote "Yes" or "No" upon it as an entirety. The women of the village were not allowed to vote. They were systematically and by design excluded as a class, and the proposition was submitted to only the voters of the male sex. The papers show that upwards of 400 women who, aside from their sex, were possessed of the other qualifications of a voter, resided in the village. A number did attempt to vote, but their votes were refused. If the women possessed the right to vote, it was because of section 41, subd. 2, of the village law (Laws 1897, p. 377, c. 414, as amended by Laws 1906, p. 984, c. 404, § 1), which reads as follows:

"A woman who possesses the qualifications to vote for village officers, except the qualification of sex, who is the owner of property in the village assessed upon the last preceding assessment roll thereof, is entitled to vote upon a proposition to raise money by tax or assessment or for the dissolution of the village."

The law has been upon the statute books since May 10, 1906. It is apparent that the Legislature intended that property upon which taxes or assessments were to be levied to pay money raised by the village should determine the proposition through the votes of the owners, regardless of sex. Was this proposition, then, one to "raise money by tax or assessment"? It was a proposition to establish a system of waterworks and to raise money to pay for the same by issuing bonds and pay the bonds by an annual tax, save such amount as should be paid from the receipts of the system. As there might not be net receipts, the adoption of the proposition carried with it authority, if necessary, to tax for the whole amount of the principal and interest of the bonds. The bonds, when issued, became a funded debt. Section 6 of the general municipal law (Consol. Laws, c. 24) provides:

"A funded debt shall not be created by a municipal corporation, except for a specific object expressly stated in the ordinance or resolution proposing it; nor unless such resolution or ordinance shall be passed by a two-thirds vote of all the members elected to the board or council adopting it, or submitted to and approved by the electors of the town or county or taxpayers of the village or city when required by law. Such ordinance or resolution shall provide

for raising annually by tax a sum sufficient to pay the interest and the principal as the same shall become due."

Its specific object here was the establishment of a system of water-works. It was required by law that the proposition be submitted to the taxpayers of the village, and the law also required that the resolution or proposition should specifically provide for the raising annually by tax of a sum sufficient to pay the interest and principal, which the resolution here did. There would be no discrimination between men and women in the taxing of the property of the village to pay for the bonds, and clearly, it seems to me, both the letter and spirit of the law permitting them to vote upon a proposition to raise money by tax or assessment give them the right to vote upon this proposition. The words "funded debt," in section 5 (now section 6) of the general municipal law "include all municipal indebtedness embraced within or evidenced by a bond, the principal of which is payable at a time beyond the current fiscal year of its issue, with periodical terms for the payment of interest, and when provision is made for the payment by the raising of the necessary funds by future taxation and the quasi pledging in advance of the municipal revenue." People ex rel. Peene v. Carpenter, 31 App. Div. 603, 52 N. Y. Supp. 781.

The defendants rely upon People ex rel. Dillon v. Moir, 62 Misc. Rep. 35, 115 N. Y. Supp. 1029, affirmed without opinion 129 App. Div. 928, 115 N. Y. Supp. 1138. In that case there was submitted to the voters of the village of Marcellus this proposition:

"Resolved, that the village of Marcellus bond itself for the sum of twenty-five thousand dollars, and the proceeds of the same, or such part thereof as shall be necessary, for the purpose of establishing for said village and the inhabitants thereof a suitable supply of pure and wholesome water as provided by section 128 of the village law."

This proposition was carried by the votes of women. Justice Andrews at Special Term held that they had no right to vote, disposing of the question in these words, after citing the statute giving the women the right to vote upon propositions to raise money by tax or assessment, and also the right to vote upon the incorporation of a village or its dissolution:

"The proposition to raise money by tax or assessment, and also the right to vote upon the incorporation of a village or its dissolution—the proposition to bond does not come within any of these classes of cases."

It is urged that a distinction cannot be made between the Marcellus Case and the Seneca Falls Case, although the Seneca Falls Case specifically provides for the taxing of property to pay for the bonds, while the Marcellus Case says nothing about it; and section 7 of the general municipal law (Consol. Laws, c. 24) is cited in support of this contention. It reads as follows:

"Where bonds of a municipal corporation have been lawfully issued, and the payment of the principal or interest thereof shall not have been otherwise paid or provided for, the same shall be a charge upon such corporation and shall be levied or assessed, collected and paid the same as other debts and charges. When for any reason any portion of the principal or interest due upon such bonds shall not have been paid, the same shall be assessed, levied and collected at the first assessment and collection of taxes by such corporation after such omission."

It appears that section 7 applies only where the bonds of a corporation have been lawfully issued. Some force must be given to the last provision of section 6, which is mandatory in its requirement that the resolution shall provide for the raising annually by tax. If the proposition was just as forceful of taxation by reason of section 7 without inserting provision therefor, then the last sentence of section 6 is in reality of no effect, and its command may with impunity be disregarded.

Again, if the Seneca Falls women were entitled to vote, the bonds were not lawfully issued, because one-half of the voters were absolutely denied their right to vote upon this proposition. I do not believe that the Moir Case is an authority governing the disposition of this motion.

I hold that the bonds contemplated by the resolution will, when lawfully issued, become a funded debt for which taxes must be levied and assessed, collected and paid, the same as for other debts and charges; and, second, that the resolution must and did provide for raising annually by taxes a sum sufficient to pay the principal and interest accruing upon such bonds. Therefore the proposition was one to raise money by tax or assessment, and hence the women were not disqualified solely by reason of their sex from voting thereon. On the contrary, having the other qualifications of voters, they were expressly authorized by the statute to vote thereon. To hold otherwise is to nullify legislation. The election was void, and the bonds authorized thereby cannot be lawfully issued.

Motion must therefore be, and is, granted, with costs, and the penalty of the bond fixed at $5,000.