### VILLAGE OF WAVERLY v. WAVERLY WATERWORKS CO.

(Supreme Court, Trial Term, Tioga County. November 3, 1910.)

1. EMINENT DOMAIN (§ 263*)—REMAND—PROCEEDINGS IN TRIAL COURT—QUESTIONS CONCLUDED.

Where, in proceedings by a village to condemn the waterworks of a private corporation, the question was certified to the Court of Appeals, "Is the petition sufficient in law to authorize" the relief prayed? and was answered in the affirmative, all questions as to the sufficiency of the pleading and the legality of the prior proceedings stated therein, raised by objections of defendant and passed on by the Appellate Division, are res judicata in subsequent proceedings in the trial court.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 263.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EMINENT DOMAIN (§ 263*)—EFFECT OF DECISION—RES JUDICATA—PROCEEDINGS IN TRIAL COURT.

The question of public necessity having been raised by defendant's objection, the Court of Appeals, in holding the petition sufficient in law to authorize the relief asked for, must be deemed to have decided that the statement of facts in the petition upon such subject was sufficient, so that the question is res judicata, if the material facts as to such question alleged in the petition are true.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 263.*]

3. WATERS AND WATER COURSES (§ 183*)—NECESSITY FOR TAKING—DETERMINATION—CONCLUSIVENESS.

Village Law (Laws 1897, c. 414, now Consol. Laws, c. 64) § 221, provides that a proposition may be submitted at a village election for the establishment of waterworks to supply the village and its inhabitants with water, or for acquisition of an existing private system. Section 222 provides that, if the proposition to acquire an existing system be adopted the board of water commissioners may purchase it at a price not exceeding the sum specified in the proposition, and, if the board cannot agree with the owner for its purchase, they may condemn it. Section 223 provides that, if the proposition to establish a system of waterworks be adopted, the board shall construct such system, and shall prepare a map and plans showing the sources of water supply and description of the land, streams, or water rights to be acquired therefor, which map and plans shall be filed with the village clerk and with the county clerk, and that the board may, in the name of the village, purchase or condemn any land or water rights necessary, and may construct the water system by contract or otherwise. *Held,* that it was the legislative intent that the voters of a village should determine whether it should own its own water supply, and their decision is not subject to any review.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 183.*]

4. EMINENT DOMAIN (§ 198*)—VILLAGE WATERWORKS—NECESSITY OF TAKING—STATE WATER SUPPLY COMMISSION—JURISDICTION.

Though the act creating the state water supply commission (Laws 1905, c. 723) provides (section 2) that a municipality shall not have power to condemn property for a new or additional water supply until it has submitted maps and profiles to the commission and the commission has approved of them, the commission merely has power to pass upon the sufficiency and safety of the plans proposed, and cannot pass upon the question of public necessity.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 198.*]

5. EMINENT DOMAIN (§ 68*)— CONDEMNATION — ACQUISITION BY VILLAGE OF WATER SYSTEM—QUESTION OF NECESSITY.

In view of Code Civ. Proc. § 3360, subd. 3, providing that in condemnation proceedings the petition must state the public use for which the property is required and the facts showing the necessity for its acquisition, the question of such necessity, in proceedings by a village to acquire the property and franchise of a private water company for establishment of a village system, is a judicial one; but, where the public necessity is established, the selection of a source or system is left within reasonable bounds to the municipal authorities.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 68.*]

6. ELECTIONS (§ 65*)—QUALIFICATION OF VOTERS—MUNICIPAL EXPENDITURES—WOMEN.

A resolution, adopted at a village election, that the village expend $105,000 in the purchase of an existing water system, necessarily contemplates and implies that money shall be raised by tax to pay such sum and the interest accruing thereon, so that, under Village Law (Laws 1897, c. 414, now Consol. Laws, c. 64) § 41, subd. 2, providing that a woman

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

who possesses the qualification to vote for village officers, except the qualification of sex, who is the owner of property in the village assessed upon the last preceding assessment roll thereof, may vote upon a proposition to raise money by tax or assessment, women taxpayers may vote upon the question whether such sum shall be expended, though the resolution did not expressly provide for the raising of money by tax.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 65.*]

Condemnation proceedings by the Village of Waverly against the Waverly Waterworks Company. Judgment for plaintiff.

See, also, 118 App. Div. 913, 103 N. Y. Supp. 1145; 128 App. Div. 912, 112 N. Y. Supp. 1149.

Frank A. Bell (Myron N. Tompkins and Randolph Horton, of counsel), for plaintiff.

Frederick E. Hawkes, for defendant Waverly Waterworks Co.

Frederick Collin, for defendant Sawyer.

J. B. Floyd, for defendant Goff.

COMAN, J.   This is a proceeding by the village of Waverly to acquire the plant and franchises of the defendant by condemnation. The proceeding was commenced in the year 1906, and the numerous questions raised by the defendants' preliminary objections as to the sufficiency of the petition and the regularity of the proceedings have been authoritatively decided.   Village of Waverly v. Waverly Waterworks Co., 117 App. Div. 336, 101 N. Y. Supp. 1070, affirmed 189 N. Y. 555, 82 N. E. 1133; Id., 127 App. Div. 440, 111 N. Y. Supp. 541, affirmed 194 N. Y. 545, 87 N. E. 1129.

Upon the first appeal it was determined that it was not necessary to procure the consent of the state water supply commission, as provided by chapter 723 of the Laws of 1905.   Upon the second appeal it was determined that the petition in this case is sufficient in law to authorize the granting of the relief asked for.   The question certified to the Court of Appeals was:

"Is the petition sufficient in law to authorize the granting of the relief asked for?"

This question was answered in the affirmative, and the order appealed from was affirmed.   To my mind, this decision conclusively determines, not only the sufficiency of the petition, but the sufficiency and legality of all the proceedings leading up to it, so far as the same are set forth in the petition.

I think that it is finally settled that the resolution which was submitted to the voters of the village of Waverly was sufficient and legal in form and substance, and that it was not necessary that it should contain a provision for the raising by annual tax of a sum sufficient to pay the interest and principal as the indebtedness to be created became due, as provided by section 5 of the general municipal law (Consol. Laws, c. 24).   This question was distinctly raised by the first preliminary objection of the defendants, and was fully considered in the opinion rendered by the justice who made the order and by the Appellate Division.   It must, therefore, be regarded as res adjudicata.

I think, also, that the question of public necessity, now sought to be raised by the defendants, has been conclusively settled. This question was raised by the fourth preliminary objection of the defendants, and the Court of Appeals, in answering the question submitted to it in the affirmative, must be deemed to have decided that the statement of facts set forth in the amended petition upon this subject is sufficient; and, as I shall find that the material facts alleged are true, this question must also be regarded as res adjudicata.

But I think that, even in the absence of this authority, the question presents no serious difficulties. So far as the question relates to the right and power of a village of this state to establish a water supply system, or to condemn a privately owned system already in existence, it has been settled by the Legislature and is not a judicial question.

A reading of sections 221, 222, and 223 of the village law (Consol. Laws, c. 64) satisfies the mind at once that it was the intention of the Legislature to place in the hands of the voters of every village the determination of the question whether or not the village should own its own water supply. There is nothing in the statute to indicate that the decision of the voters upon this question is subject to any review whatever. If the voters resolve to purchase an existing system, and the board cannot agree with its owners upon a price, they may proceed to condemn it. If the proposition is to establish a system of waterworks, "the board shall proceed to construct such system accordingly."

The state water supply commission has no jurisdiction over this question. It is true that the act creating the commission (section 2) provides that a municipality shall not have the power to condemn for the purposes of a new or additional water supply until it has submitted maps and profiles to the commission and the same have been approved by it. But this clearly does not mean that the question of public necessity shall be submitted to the commission. It means merely that the commission shall pass upon the sufficiency and safety of the plans proposed.

Nevertheless there remains a question of necessity in this class of cases, which is judicial, and which the court must pass upon; and it is to this question that the provisions of subdivision 3, § 3360, of the Code of Civil Procedure apply. That section requires that the petition shall contain "a concise statement of the facts showing the necessity of its acquirement for such use." A situation can be easily imagined in which there would be no necessity for a village to condemn a private water plant or establish a new system, as where it was already the owner of an adequate and suitable system, and under such circumstances it would doubtless be the duty of the court to restrain an attempt to secure another system upon the ground that there was no necessity for it. But it is no answer to this petition to say that the plaintiff and its inhabitants are already satisfactorily supplied by the defendant, because, as we have already seen, the Legislature has given the plaintiff the absolute right to secure a municipally owned plant.

Again, the question of necessity might arise if it were alleged and proven that the property sought to be condemned was not of a character suitable for the purpose for which it was sought. Real or per-

sonal property not connected with or suitable for use in a water supply system could not be condemned and taken from its owner under a pretense that it was to be used for such purpose. As said by the learned counsel for the defendant, trustee:

"The property sought need not be necessary, in the sense that it must be absolutely and imperatively indispensable."

If such were not the rule, it would be impossible for the plaintiff to make a selection between different and equally desirable sources of supply; it being impossible to say that any particular one of them was indispensable. So the courts have adopted the common-sense rule that, the public necessity being established, the selection of a source or system is left within reasonable bounds to the municipal authorities.

There is and can be no question that the property sought to be condemned is the best and most appropriate source of supply available to the plaintiff. An attempt to establish another and competing system would be wasteful and unbusinesslike, and absolutely destructive to the defendant company's property, and, while it would be strictly legal (Skaneateles Water Co. v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687), it would be unjust and oppressive, and would subject the plaintiff and its officers to the condemnation of fair-minded men.

So far from this being an attempt at spoliation, it seems to me that the village authorities have pursued the only fair and reasonable course open to them when, instead of destroying the property of the defendant company in the manner indicated, as they had a strict legal right to do, they instituted a proceeding to buy it and pay full value for it.

The next question raised by the defendants is much more difficult of determination. It is conceded that, at the election at which the resolution providing for the condemnation of the defendant company's system was adopted, a large number of women taxpayers voted—a number larger than the majority by which the resolution was adopted. It is also conceded that, if these women were not entitled to vote at such election, the resolution was not legally adopted. The only authority for a woman to vote at any village election rests in section 41, subd. 2, of the village law, which provides:

"A woman who possesses the qualifications to vote for village officers, except the qualification of sex, who is the owner of property in the village assessed upon the last preceding assessment roll thereof, is entitled to vote upon a proposition to raise money by tax or assessment, or for the dissolution of the village."

In the recent case of Gould v. Village of Seneca Falls (Sup.) 118 N. Y. Supp. 648, affirmed 137 App. Div. 417, 121 N. Y. Supp. 723, this statute has been considered and passed upon in its relation to the proceedings to establish a village water supply system, and it was held in that case, both at Special Term and in the Appellate Division, that the women of Seneca Falls were entitled to vote upon the question. I should unhesitatingly follow this decision, and make the same holding in this case, without any further discussion of the question, were it not that the facts in the two cases are not strictly analogous.

In the Seneca Falls Case the resolution was presented, under section

221 of the village law, "for the establishment of a system of waterworks," etc.; while in the Waverly Case the resolution was presented under section 222, "for the acquisition of an existing system of waterworks." Section 6 of the general municipal law provides as follows:

"A funded debt shall not be contracted by a municipal corporation except for a specific object, expressly stated in the ordinance or resolution proposing it; nor unless such resolution or ordinance shall be passed by a two-thirds vote of all the members elected to the board or council adopting it, or submitted to and approved by the electors of the town or county or taxpayers of the village or city when required by law. Such ordinance or resolution shall provide for raising annually, by tax, a sum sufficient to pay the interest and principal as the same shall become due."

In the Seneca Falls Case this provision was held to be applicable, and the resolution contained a provision drawn in accordance with its terms. In this case it has been held by the Special Term and Appellate Division, and, presumably, by the Court of Appeals, that this provision is not applicable, for reasons not necessary here to repeat. In the Seneca Falls Case the resolution submitted to the electors did contain, in express terms, "a proposition to raise money by tax"; while, in this case, the resolution did not, in express terms, contain such a proposition. So it may be conceded at the outset that if it be necessary, in order to entitle women to vote upon it, that a proposition should, by express words, provide for the raising of money by tax, then the women of Waverly were not entitled to vote upon this question.

Let us consider whether such is the intent and purpose of the statute. The purpose of the provision above quoted from the general municipal law was not to make provision for the payment of the funded debt of municipalities. That could be done under other laws. The provision was adopted as a safeguard against municipal extravagance, to prevent the piling up of municipal indebtedness to be paid by future generations, to make sure that bonds should not be issued unless provision should be made for their payment within a reasonable time, and that the fact that such payment must be made within such time was sharply drawn to the attention of the voter. If the provision quoted from the general municipal law had never been adopted, and the resolution passed by the voters had contained no provision on the subject, its effect would have been exactly the same, so far as the question of raising money by tax is concerned, except as to the time or times when it must be raised. The resolution provided that the village should expend $200,000 to $240,000 for the establishment of a water supply system. It is not to be presumed that some one is going to present that sum to the village, but, on the contrary, that it is to be paid from the only source of income and the only means available to the village, to wit, taxes; and this, whether it be paid immediately or its payment postponed by the issue of bonds.

So, I repeat that it was not the insertion in the resolution of the provision conforming it to the requirements of the general municipal law that made it "a proposition to raise money by tax." That proposition was necessarily inferred from the nature of the resolution, and was inherent in it without reference to the statutory provision. In my

judgment a resolution that the village of Waverly expend $105,000 in the purchase of an existing water supply system, or in the establishment of a new one, necessarily contemplates and implies that money shall be raised by tax for the purpose of paying the same and the interest accruing thereon.

It will be seen that section 222 of the village law, as construed by the courts in this case, provides for two elections, in case the commissioners in condemnation proceedings shall find that the value of the property is greater than the sum mentioned in the proposition. The following is the provision on that subject:

"If the value thereof fixed by the commissioners appointed in the condemnation proceedings be greater than the sums specified in the proposition, such proceedings must be discontinued, unless the payment of the additional amount be authorized at a village election."

In the event that such an election were to be held, and it was necessary or desirable to issue bonds to raise the money—the usual method—it would be necessary to insert in the resolution a provision in conformity to section 6 of the general municipal law. It is probable that in any event another election would be necessary to authorize a bond issue. It is conceded by counsel for the defendant, and was distinctly held in the Seneca Falls Case, that at such election women could legally vote; the distinction made by counsel being that in the latter case there is an express provision for the raising of money by tax, while in the former there is none.

I think that this distinction is too technical, and cannot prevail. Its effect would be to hold that the women taxpayers could vote on the minor question as to the time and manner of raising the money by tax, but could not vote upon the more important question whether the money should be raised or expended at all. My conclusion is that women taxpayers were entitled to vote and that the election was legal.

Judgment is directed accordingly in favor of the plaintiff, and directing the appointment of commissioners to appraise the damages.